[Nos. 84114-4; 85075-5.   En Banc.]
Argued May 19, 2011.      Decided October 18, 2012.

*In the Matter of the Estate of* SHARON M. BRACKEN.

CAROL B. CLEMENCY ET AL., *as Personal Representatives, Appellants*, v. THE DEPARTMENT OF REVENUE, *Respondent.*

*In the Matter of the Estate of* BARBARA J. NELSON.

WILLIAM C. NELSON ET AL., *as Personal Representatives, Appellants*, v. THE DEPARTMENT OF REVENUE, *Respondent.*

*In the Matter of the Estate of* JOHN T. TOLAND.

NANCY TOLAND RICHARDS ET AL., *as Personal Representatives, Appellants*, v. THE DEPARTMENT OF REVENUE, *Respondent.*

*Philip A. Talmadge* (of *Talmadge/Fitzpatrick*); and *Douglas C. Lawrence, Scott A. W. Johnson*, and *Rosemary Reed* (of *Stokes Lawrence PS*), for Estate of Bracken appellants.

*Rhys M. Farren, Malcolm A. Moore*, and *Richard A. Klobucher* (of *Davis Wright Tremaine LLP*), for Estate of Nelson appellants.

*Mark W. Roberts* and *Luke E. Thomas* (of *K&L Gates LLP*); and *Jessica A. Skelton* (of *Pacifica Law Group LLP*), for Estate of Toland appellants.

*Robert M. McKenna, Attorney General*, and *David M. Hankins, Donald F. Cofer*, and *Charles E. Zalesky, Assistants*, for respondent.

*Mark W. Roberts* and *Taki V. Flevaris* (of *K&L Gates LLP*) on behalf of Estate of Barbara Hagyard Mesdag, amicus curiae.

¶1 SIDDOWAY, J.* — The estates of Barbara J. Nelson and Sharon M. Bracken (Estates) challenge the efforts of the Washington State Department of Revenue (DOR) to treat

---

* Judge Laurel H. Siddoway is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

them as having engaged in a present taxable transfer of assets that were actually transferred years ago by Ms. Nelson's and Ms. Bracken's late husbands' estates. As authority for finding and taxing fictional present transfers, DOR relies on the legislature's adoption in 2005 of definitions from the federal estate tax regime. For federal estate tax purposes, the United States Department of the Treasury's authority to presently tax fictional transfers by the wives' estates of what is referred to as "qualified terminable interest property" (QTIP) was based on earlier consent to federal tax deferral and is clear.

¶2 We hold that DOR exceeded its authority in enacting regulations that allow it to treat transfers completed by William Nelson and Jim Bracken years ago as if the estates had elected to defer *state* estate tax on the transfers, to be paid by their wives' estates. DOR stands on a different footing than the United States Department of the Treasury. The treasury can rely on Congress's enactment, in advance, of a taxation choice and the predecessor Nelson and Bracken estates' informed and affirmative election to defer federal taxation. DOR must rely on the asserted authority of our legislature to tax transfers years after the fact absent any deferral agreement by the taxpayer. We reject DOR's interpretation of chapter 83.100 RCW and reverse the trial court. Summary judgment should be entered in favor of the Estates.

## FACTS AND PROCEDURAL BACKGROUND

¶3 The complication for Washington estate tax collections that gives rise to these cases has its genesis in the coupling and later decoupling of federal and state estate taxes. To explain the effect of the taxation changes, we begin with the estates of Ms. Nelson's and Ms. Bracken's late husbands, William Nelson and Jim Bracken.

### Creation of "QTIP" by the William Nelson and Jim Bracken Estates

¶4 Jim Bracken died a Washington resident in 1984. William Nelson died a Washington resident in 2004. At the

time they died, federal tax law allowed their estates an unlimited marital deduction for property passed outright to a surviving spouse or in certain other ways giving the surviving spouse control over the transferred property. Federal law had also been liberalized by the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. No. 97-34, 95 Stat. 172, to permit certain transfers of "terminable interests" to qualify for the marital deduction. *See* H.R. REP. No. 97-201, at 263 (1981), *reprinted in* 1981-2 C.B. 352. For federal estate tax purposes, "terminable interests" are interests such as life estates that will terminate or fail on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur. *See* I.R.C. § 2056(b)(1).

¶5 For the most part, terminable interests are not eligible for the marital deduction. *Id.* But in ERTA, Congress saw it as desirable to allow estate plans that provide for the lifetime needs of a surviving spouse and ensure that whatever property remaining will pass to the first spouse's children to claim the marital deduction. It recognized that

> unless certain interests which do not grant the spouse total control are eligible for the unlimited marital deduction, a decedent would be forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children.

H.R. REP. No. 97-201, at 160. Congress created QTIP as an interest that could be transferred tax free without granting the surviving spouse total control. As further explained in the house report,

> if certain conditions are met, a life interest granted to the surviving spouse will not be treated as a terminable interest. The entire property subject to such interest will be treated as passing to such spouse and no interest in such property will be considered to pass to any person other than the spouse. Accordingly, the entire interest will qualify for marital deduction.

*Id.* at 161.

¶6  Advantages of the QTIP option are many. The spouse who dies first controls the final disposition of the property, while allowing the surviving spouse to use the property or receive the income it generates, unreduced by front-end estate taxation. The personal representative of the first spouse elects whether to treat the property as QTIP and claim the marital deduction, thereby maximizing flexibility. If the QTIP election is made, the transfer of the property is not taxed in the estate of the first spouse even though it is he or she who makes the actual transfer. But the statutorily required quid pro quo is that the property is deemed for federal estate tax purposes to have been transferred to the surviving spouse at the first spouse's death and is deemed to be transferred to the residuary beneficiaries from the surviving spouse upon the surviving spouse's later death. The result is to draw the property into the estate of the surviving spouse; in this way, the estate of the first spouse gets a full marital deduction, yet the property does not escape ultimate taxation.

¶7 Mr. Bracken and Mr. Nelson established marital trusts in their wills, naming their wives as lifetime beneficiaries. The estates made the elections required to qualify the trusts as QTIP trusts for the federal estate tax marital deduction under I.R.C. § 2056(b)(7). They claimed corresponding marital deductions for the QTIP included in the trusts.

¶8 No election was made to qualify Jim Bracken's or William Nelson's QTIP trusts for a Washington marital deduction and state tax deferral. No such election or deduction existed under state estate tax law in 1984 or 2004. Between 1981 and 2004, Washington imposed an estate tax in the amount of federal estate tax that the treasury would share with a state through a credit claimed on a decedent's federal estate tax return. State estate taxes taking advantage of this federal tax sharing were called "pickup" taxes. Some history on the pickup tax will help explain later developments.

¶9 In the 1920s, the states, which had historically been more dependent on death taxes[1] for their revenue needs than had the federal government, became engaged in a "race to the bottom" after Florida abolished its death tax. Florida reasoned that other state revenues derived from attracting wealthy Americans to live out their retirement years in Florida would more than offset lost death taxes. As Alabama followed suit and more states were forced to consider eliminating death taxes in order to compete for wealthy residents, the national solution arrived at was for states to set aside their historical objection to federal death taxes in exchange for the federal government becoming the principal death tax collector and sharing a generous percentage of the amount collected. Sharing was accomplished through a federally set credit for state death taxes. The states could share the federally collected taxes or not; if they did not, the taxes stayed with the federal government. With states able to opt into a credit that was pain-free to their residents, the change had the intended effect of eliminating state tax competition. Even Florida, after unsuccessfully challenging the federal tax, adopted its own pickup tax rather than pass up the generous credit. *See* Jeffrey A. Cooper, *Interstate Competition and State Death Taxes: A Modern Crisis in Historical Perspective*, 33 PEPP. L. REV. 835 (2006).

¶10 At the time of Mr. Bracken's and Mr. Nelson's deaths, Washington relied on a pickup tax (or, as discussed below, a tax designed to mirror a pickup tax) codified at chapter 83.100 RCW. Again, at the time of the deaths of Mr. Bracken and Mr. Nelson, Washington law made no provision for a QTIP or other election to defer state estate taxes.

---

[1] "Death taxes" is a generic term for taxes such as estate, inheritance, and succession taxes.

*Enactment of the Economic Growth and Tax Relief Reconciliation Act and the Washington Response*

¶11 In 2001, Congress passed the Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA), Pub. L. No. 107-16, 115 Stat. 38, providing for the gradual elimination of federal estate taxes between 2001 and 2010 and for their return in 2011. EGTRRA also provided for the elimination of the state death tax credit over a period of four years. As the state death tax credit was eliminated, so too was the state estate tax in every state with a pickup tax.

¶12 Reduction and elimination of the state death tax credit allowed the top marginal federal estate tax rate to decrease at the same time that the effective tax rate for the federal government, based on the proportion of tax it kept, actually increased. This led one author to observe that EGTRRA "clearly is not what it at first seems to be. Touted as a massive federal tax cut, it is more properly seen as a more modest federal tax cut combined with state tax eradication." Jeffrey A. Cooper, John R. Ivimey & Donna D. Vincenti, *State Estate Taxes After EGTRRA: A Long Day's Journey into Night*, 17 QUINNIPIAC PROB. L.J. 317, 323 (2004).[2]

¶13 Following elimination of the state estate tax credit in 2005, states have been required either to modify their estate tax or forgo estate tax revenues.[3] Rather than create a new taxing scheme, our legislature's first response was to revise existing statutes to tie estate taxation to provisions

---

[2] Still, while the effective tax rate to the federal government increased, the amount of federal estate taxes paid by taxpayers declined during the 2001-2009 time frame because of the lower marginal estate tax rates and the higher federal exemption amounts that existed before repeal of the federal estate tax in 2010 and following the Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, 124 Stat. 3296.

[3] The American College of Trust and Estate Counsel (ACTEC) has published a death tax chart showing how different states have responded. *See* Charles D. Fox IV & Adam M. Damerow, *The ACTEC State Death Tax Chart – Still Going Strong After Seven Years*, 35 ACTEC J. 53 (Summer 2009).

of the Internal Revenue Code as they existed on January 1, 2001, prior to EGTRRA, with DOR continuing to collect the same amount of tax as before. Former RCW 83.100.020(15) (2001). In effect, DOR ignored the phase-out and continued to collect the amount of a no-longer-existing credit. In *Estate of Hemphill v. Department of Revenue*, 153 Wn.2d 544, 105 P.3d 391 (2005), this court invalidated that response, emphasizing, as it had earlier in *Estate of Turner v. Department of Revenue*, 106 Wn.2d 649, 724 P.2d 1013 (1986), that then-existing provisions of chapter 83.100 RCW were the result of a voter's initiative clearly premised on the concept that the State would impose only a pickup tax. In *Turner* and again in *Hemphill*, this court rejected DOR's argument that our statute imposed an independently operating tax, stating in *Hemphill* that "[u]ntil or unless the legislature revises [former] RCW 83.100.030 [(1988), *repealed by* LAWS OF 2005, ch. 516, § 17] to specifically and expressly create a stand-alone estate or inheritance tax, [former] RCW 83.100.030 remains as a 'pickup' tax, in which all state estate tax due must be fully reimbursed as a current federal credit." *Hemphill*, 153 Wn.2d at 551.

¶14 In response to *Hemphill*, the legislature passed the Estate and Transfer Tax Act (Act), creating a stand-alone tax effective May 17, 2005. LAWS OF 2005, ch. 516, § 1, *codified as* ch. 83.100 RCW. The Act provides that the estate tax is "imposed on every transfer of property located in Washington." RCW 83.100.040(1). Provisions of the Act apply "prospectively only and not retroactively" and "only to estates of decedents dying on or after [May 17, 2005]." LAWS OF 2005, ch. 516, § 20.

¶15 While creating a stand-alone tax, the Act relies substantially on the federal estate tax regime. It incorporates concepts and definitions from federal law and operates almost entirely in tandem with taxable estate and tax calculation and reporting for federal estate tax purposes. Like the federal estate tax, the tax is not a property tax, but a tax imposed on the transfer of the taxable estate. WAC

458-57-105(2); Treas. Reg. § 20.0-2(a). Computation of the amount of state estate tax is based on the "Washington Taxable Estate," RCW 83.100.040(2)(a), which is elsewhere defined as the "federal taxable estate," with specified adjustments. *See* RCW 83.100.020(13). The Act's substantial dependence on the federal regime is qualified, however, by the proviso that the Act "incorporates only those provisions of the internal revenue code as amended or renumbered as of January 1, 2005, that do not conflict with the provisions of this chapter." RCW 83.100.040(3).

¶16 The Act authorized DOR to provide by rule for "a separate [QTIP] election on the Washington return, consistent with section 2056 or 2056A of the Internal Revenue Code, for the purpose of determining the amount of tax due under this chapter." RCW 83.100.047(1). In April 2006, DOR adopted regulations to create the state QTIP election and provide guidance on the application and interpretation of the new Act. *See* ch. 458-57 WAC. None of the parties or amicus contest the validity or operation of WAC 458-57--115(2)(c)(iii), which provides for a state QTIP election that may be made by personal representatives of Washington decedents dying after the effective date of the Act in order to defer state estate taxation until the death of the surviving spouse. As with federal law and regulation, Washington regulations provide that if a QTIP election is made, the surviving spouse "must include the value of the remaining property in his or her gross estate for Washington estate tax purposes" even though the surviving spouse makes no transfer. WAC 458-57-115(2)(c)(iii)(B).

¶17 The 2006 regulations also set forth the manner in which the Washington taxable estate is to be calculated. Former WAC 458-57-105 (2006); former WAC 458-57-115 (2006). Under the Act and the 2006 regulations, the calculation of the Washington taxable estate begins with the "federal taxable estate." RCW 83.100.020(13); former WAC 458-57-105(3)(q)(vi). The 2006 regulations provide for a series of adjustments to the federal taxable estate by which

the effect of federal QTIP elections is canceled out. The regulations adjust the estate for the effect of any Washington QTIP elections. As a result, under the 2006 regulations the only QTIP required to be included in the Washington taxable estate is QTIP for which a state QTIP election was made. Former WAC 458-57-105(3)(q)(v); former WAC 458-57-115(2)(d)(v). The validity of those regulations is not challenged by the Estates.

## Assessment of the Estates

¶18 Sharon Bracken died a Washington resident on September 24, 2006. As required by I.R.C. § 2044, her federal taxable estate included the value of the QTIP that remained in the QTIP trust established upon the death of her husband. Applying the adjustments called for by DOR's 2006 regulations, the assets remaining in the QTIP trust were not included as assets in Ms. Bracken's Washington taxable estate. *See* former WAC 458-57-105(3)(q)(vi); former WAC 458-57-115(2)(d)(vi).

¶19 DOR issued a deficiency notice to the Sharon Bracken estate based on its failure to include assets remaining in the 1984 QTIP trust in her estate. It took the position that its 2006 regulations do not apply to the estate of a decedent whose federal taxable estate includes QTIP as the result of a federal tax deferral election made before May 17, 2005.[4] The result for such estates is that federal QTIP is not subtracted in calculating the Washington taxable estate. In other words, DOR asserts Washington's right to presently tax assets transferred at any time before May 17, 2005, anywhere, by any decedent, as long as federal QTIP treatment was elected for the transfer and the surviving spouse dies domiciled in Washington after May 17, 2005.

---

[4] In 2009, DOR amended its regulations defining calculation of the Washington taxable estate to reflect this position; as revised, the regulations no longer reduce the estate by the value of assets included in the federal taxable estate of a decedent as a result of a QTIP election made before May 17, 2005. WAC 458-57-105(3)(q)(vi), -115(2)(d)(vi).

The result was to increase the amount of Sharon Bracken's Washington taxable estate by over $13.7 million.

¶20 The estate declined to pay the amount cited in the deficiency notice, and DOR made findings fixing the amount it asserted was due and filed its findings with the probate court as authorized by RCW 83.100.150. The estate timely filed objections to DOR's findings.

¶21 The proceedings involving the Barbara Nelson estate, which was similarly situated, were consolidated with those of the Sharon Bracken estate for purposes of discovery and trial on the objections. The parties eventually filed cross motions for summary judgment. The trial court granted DOR's motion and denied the motions of the Estates. It deferred to DOR's interpretation that its 2006 regulations do not apply to the Estates. It also found the Estates' failure to include the assets in the QTIP trust as part of the Washington taxable estate to be an impermissible deduction.

¶22 The Sharon Bracken estate paid the Washington estate tax owed and filed this appeal, seeking direct review by this court. The Barbara Nelson estate filed an appeal with Division One of the Court of Appeals. This court granted direct review and consolidated the two cases.

## ANALYSIS

¶23 This case presents an appeal from summary judgment and from a trial court's conclusions in a tax refund case, both of which we review de novo. RCW 83.100.180; RCW 11.96A.200; *Lamtec Corp. v. Dep't of Revenue*, 170 Wn.2d 838, 842, 246 P.3d 788 (citing *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004)), *cert. denied*, 132 S. Ct. 95 (2011); *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 148-49, 3 P.3d 741 (2000) (citing *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 940, 845 P.2d 1331 (1993)). The Estates challenge DOR's findings that they are subject to Washington estate tax on

the QTIP as outside of its authority for two reasons: because no transfer occurred on death on which the tax could be imposed and because DOR's 2006 regulations apply to them and allow them to exclude federally elected QTIP. *See* RCW 34.05.570(4)(c)(ii). Alternatively, they argue that if imposition of tax on the QTIP was proper under RCW 83.100.040, then it is an unconstitutional tax because it is retroactive in violation of the due process and impairment clauses of the United States and Washington Constitutions. U.S. CONST. amend. XIV; U.S. CONST. art. I, § 10; WASH. CONST. art. I, §§ 3, 23; *see* RCW 34.05.570(4)(c)(i). We need not reach the Estates' constitutional challenges because we construe the Act to tax only transfers, either at the time they are made or where there has been a voluntary election to defer state taxation, and only prospectively.

¶24 The primary objective of statutory construction is " 'to ascertain and carry out the intent of the Legislature.' " *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (quoting *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)). Additional rules apply to taxing statutes. "[A] tax statute 'must be construed most strongly against the taxing power and in favor of the taxpayer,' " *Lamtec*, 170 Wn.2d at 842-43 (quoting *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992)), consistent with our constitution's requirement that "every law imposing a tax shall state distinctly the object of the same to which only it shall be applied." WASH. CONST. art. VII, § 5. The legislature is "presumed to have intended a meaning consistent with the constitutionality of [the statute's] enactment." *State ex rel. Dawes v. Wash. State Highway Comm'n*, 63 Wn.2d 34, 38, 385 P.2d 376 (1963).

*Transfer Taxation Requires a Transfer*

¶25 The stand-alone estate tax adopted by the Act is, like the federal estate tax, a transfer tax, "imposed on

every transfer of property located in Washington." RCW 83.100.040(1). *Compare* RCW 83.100.040, *with* I.R.C. § 2001(a). The requirement for a transfer is constitutionally grounded and long standing. It arises from the distinction between an excise tax, which is levied upon the use or transfer of property (even though it might be measured by the property's value), and a tax levied upon the property itself. A tax on the value of either real or personal property, or income (rents, dividends, or interest) from either, is a direct tax. *Pollock v. Farmers' Loan & Trust Co.*, 158 U.S. 601, 15 S. Ct. 912, 39 L. Ed. 1108 (1895), *superseded on other grounds by constitutional amendment*, U.S. CONST. amend. XVI. The United States Constitution provides that any direct tax must be apportioned between the states. U.S. CONST. art. I, § 9, cl. 4. Given the difficulties of apportioning a tax among the states, Congress has not intentionally adopted a direct tax since 1861. Erik M. Jensen, *Interpreting the Sixteenth Amendment (by Way of the Direct-Tax Clauses)*, 21 CONST. COMMENT. 355, 357 & n.7 (2004) (citing Act of Aug. 5, 1861, ch. 45, 12 Stat. 292). It has relied for revenues on the income tax, authorized by adoption of the Sixteenth Amendment, and on excise taxes. *See* Jensen, *supra*, at 361-63.

¶26 The estate tax has long been recognized as an excise tax. *United States v. Wells Fargo Bank*, 485 U.S. 351, 355, 108 S. Ct. 1179, 99 L. Ed. 2d 368 (1988). *Knowlton v. Moore*, 178 U.S. 41, 47, 20 S. Ct. 747, 44 L. Ed. 969 (1900), which is the seminal case establishing that succession taxes, inheritance taxes, estate taxes, and other death taxes are excise taxes on the privilege of shifting or transmitting property at death, states:

> Taxes of this general character are universally deemed to relate, not to property *eo nomine*, but to its passage by will or by descent in cases of intestacy, as distinguished from taxes imposed on property, real or personal, as such, because of its ownership and possession. In other words, the public contribution which death duties exact is predicated on the passage of

property as the result of death, as distinct from a tax on property disassociated from its transmission or receipt by will, or as the result of intestacy.

*Knowlton* concluded that the "tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested." *Id.* at 56. The principle remains unchanged. *See* Treas. Reg. §§ 20.2033--1(a) ("the estate tax . . . is an excise tax on the transfer of property at death and is not a tax on the property transferred"). If estate taxation cannot be tied to a transfer, it fails as an unapportioned (and therefore unconstitutional) direct tax. *Levy v. Wardell*, 258 U.S. 542, 42 S. Ct. 395, 66 L. Ed. 758 (1922) (attempt to tax, at death, a lifetime transfer of stock with retained income interest would be an unapportioned direct tax, not a transfer tax). *Fernandez v. Wiener*, 326 U.S. 340, 352, 66 S. Ct. 178, 90 L. Ed. 116 (1945) recognizes that Congress may tax real estate or personal property "if the tax is apportioned" and, absent apportionment, may tax "a particular use or enjoyment of property or the shifting from one to another of any power or privilege incidental to the ownership or enjoyment of property." More recently the United States Supreme Court has recognized that "[i]f there is any taxable event . . . which can fairly be said to be a 'transfer,'" the tax is constitutional without apportionment. *United States v. Mfrs. Nat'l Bank of Detroit*, 363 U.S. 194, 198, 80 S. Ct. 1103, 4 L. Ed. 2d 1158 (1960).

¶27 The same principles that require a transfer for federal estate tax purposes were held to require a transfer for Washington's former inheritance tax in *In re Estate of McGrath*, 191 Wash. 496, 505, 71 P.2d 395 (1937), *cert. denied*, 303 U.S. 651 (1938), "for in neither case can there be any tax unless there is a transfer." The court observed in *McGrath* that the transfer requirement would apply equally to any Washington estate tax, stating:

It is universally agreed that the right of the sovereign to control the transfer is the sanction upon which all such exactions rest, whether they be called estate taxes, succession taxes, inheritance taxes, or privilege taxes. It is, therefore, in the very nature of things, impossible for an estate or inheritance tax to be exacted with respect to something in which the decedent did not own or have some kind of right at the time of his death, for in such a case there is no transfer.

*Id.* at 503.

¶28 Faced with arguments by the Estates and amicus that DOR is attempting to tax something other than a transfer, DOR too readily concludes that a fictional or deemed transfer is something that Congress or the legislature can substitute for an actual transfer. When DOR argues that " 'the power of Congress to change the common-law rule is not to be doubted,' " it fails to consider that a transfer—a real transfer—is the sanction for the tax. Resp't's Br. at 28 (quoting *United States v. A&P Trucking Co.*, 358 U.S. 121, 124, 79 S. Ct. 203, 3 L. Ed. 2d 165 (1958) (Congress need not abide by the common law distinction between corporations and partnerships in regulating common carriers)).

*QTIP Is Transferred by the Electing Spouse, Not the Surviving Spouse*

¶29 Barbara Nelson, Sharon Bracken, and the Estates never transferred, in any manner, the QTIP that passed to the residuary beneficiaries of the QTIP trust. Property is transferred from a trustor when a trust is created, not when an income interest in the trust expires. *Coolidge v. Long*, 282 U.S. 582, 605, 51 S. Ct. 306, 75 L. Ed. 562 (1931). QTIP does not actually pass to or from the surviving spouse. *Estate of Bonner v. United States*, 84 F.3d 196, 198 (5th Cir. 1996). Contrary to the suggestion of the concurrence/dissent, the Internal Revenue Code does not regard the death of the surviving spouse as giving rise to a

taxable transfer even though the deemed transfer on the death of the surviving spouse is the taxable event. A transfer supporting taxation has occurred, but federal law and regulation recognize that it occurred upon the death of the first spouse. The transfer is taxed later at a time when there is no transfer, by virtue of the deferral election.

¶30 The Internal Revenue Code and its regulations provide, with their characteristic precision, that the first spouse engages in the transfer of QTIP and that passage of QTIP to and from the surviving spouse is a fiction. The value of the QTIP assets was required to be included in Mr. Bracken's gross estate, to be taxed, net of deductions, by virtue of the transfer of his estate. I.R.C. § 2033 (value of gross estate includes the value of all property to the extent of the interest of the decedent), § 2001(a) (tax is imposed on the transfer of the estate); Treas. Regs. §§ 20.0-2(a), 20.2033-1(a), 20.2044-1(e) ex. 1. Mr. Bracken's transfer of an income interest in property to his wife with the remainder to others would not ordinarily qualify for the marital deduction under § 2056(a) because Ms. Bracken's interest was terminable within the meaning of § 2056(b)(1). However, § 2056(b)(7)(A) provides an exception to this terminable interest rule for qualifying transfers for which an election is made. Notably, I.R.C. § 2056(b)(7)(B)(i)(I) provides that property could not qualify as QTIP unless it actually passed from Mr. Bracken. The QTIP was not taxed in his estate, however, because by virtue of the election, his estate was allowed to take the marital deduction on the basis of an explicit fiction that the entire property had passed to her. "For purposes of § 2056(a), [QTIP] *is treated as passing to the surviving spouse*, and no part of the property *is treated as passing to any person other than the surviving spouse*." Rev. Proc. 2001-38, 2001-1 C.B. 1335 (emphasis added); I.R.C. § 2056(b)(7)(A). DOR agreed in proceedings below that QTIP is property of the estate of the first spouse to die and that transfer to a QTIP trust takes place when the first spouse dies and the trust is created.

¶31 Laws and regulations applicable to the taxation of Ms. Bracken's estate are similarly precise in recognizing that she did not make the transfer, and that the inclusion of QTIP in her estate is fictional, by virtue of the election made by Mr. Bracken's estate. I.R.C. § 2044(c) provides that where the QTIP election has been made and the marital deduction earlier allowed, then, for purposes of the estate tax, QTIP "includible in the gross estate of the decedent under subsection (a) *shall be treated as property passing from the decedent.*" (Emphasis added.)

*Voluntary Deferral Provides a Basis for Later Taxation*

¶32 Where a basis for taxation exists, a taxpayer can agree to defer the taxation, and federal estate tax can be assessed on fictional QTIP transfers by the Estates on rationales that also support Washington's creation of a state QTIP election that operates prospectively. But those rationales do not support the retroactive estate taxation of federal QTIP that DOR attempted to impose here.

¶33 In *Milliken v. United States*, 283 U.S. 15, 24, 51 S. Ct. 324, 75 L. Ed. 809 (1931), which held that the commissioner of the Internal Revenue Service could levy and assess estate tax on a gift in contemplation of death, the United States Supreme Court relied on the fact that a federal tax on such gifts existed at the time the gift was made and that imposing such a tax was an appropriate and necessary measure to secure the effective administration of a system of death taxes. In *Estate of Mellinger v. Commissioner*, 112 T.C. 26, 35 (1999), a case dealing with Congress's basis for taxing QTIP to the estate of the surviving spouse, the tax court characterized its inclusion in the survivor's estate as "the quid pro quo for allowing the marital deduction for the estate of the first spouse to die," even though "QTIP property does not actually pass to or from the surviving spouse." *Estate of Morgens v. Commissioner*, 133 T.C. 402, 412-14 (2009), *aff'd*, 678 F.3d 769 (9th Cir. 2012), also recognized

that the QTIP regime employs a fiction but adopted *Mellinger*'s quid pro quo rationale as a sufficient basis for taxing QTIP in the estate of the surviving spouse.

¶34 Where an election to claim a marital deduction for QTIP is made by the first spouse, taxing the foreseeable inclusion of the QTIP in the survivor's estate as a quid pro quo also accords with the duty of consistency under federal tax law, also referred to as quasi-estoppel. The duty of consistency prevents a taxpayer who has benefited from a past representation from adopting a position inconsistent with that taken in a year barred by the statute of limitations. *Estate of Letts v. Comm'r*, 109 T.C. 290, 296 (1997). For the duty to apply, there must have been (1) a representation by the taxpayer; (2) reliance on the representation by the Internal Revenue Service; and (3) an attempt by the taxpayer, after the statute of limitation on assessment has expired, to change the representation. *Cluck v. Comm'r*, 105 T.C. 324, 332 (1995). The duty of consistency can bind one person to a representation made by another where the two are deemed to be in privity, including, where privity exists, binding a beneficiary of an estate to a representation made on the estate's federal estate tax return. *Beltzer v. United States*, 495 F.2d 211, 212 (8th Cir. 1974). A QTIP income beneficiary has been held bound by the duty of consistency to her spouse's claim of a marital deduction for the QTIP. *Letts*, 109 T.C. at 301 (estate of surviving wife bound by husband's estate's treatment of marital trust as deductible).

*The Estates Have Not Transferred the Federal QTIP at Issue or Benefited from a State Tax Election*

¶35 The personal representatives of Mr. Nelson's and Mr. Bracken's estates made the election required by I.R.C. § 2056(b)(7) for federal estate tax deferral, thereby subjecting the surviving wives' estates to later federal taxation in light of these recognized rationales of notice, election, benefit, and consistency. The personal representatives made no

state election. No state election existed. The predecessor estates received no benefit from Washington State. The amount of estate tax the first Nelson and Bracken estates avoided by the marital deduction was unaffected by the fact that, by virtue of the pickup tax, any additional tax those estates had paid would have been shared with Washington State.

¶36 Given this difference between the taxing posture of the federal government and the State, DOR appropriately read the Act initially to permit creation of a state QTIP election that would operate only prospectively. This was consistent with the legislature's directive that the Act was to apply prospectively, not retroactively, to "estates of decedents dying on or after the effective date of this section." LAWS OF 2005, ch. 516, § 20. DOR's 2006 regulations were valid and were justifiably relied upon by the Estates. Of course, DOR thereafter changed its position and issued notices of deficiency to these and other estates, giving rise to the parties' dispute.

¶37 The problem with DOR's justification for its position—the Act's definition of "Washington Taxable Estate"—is that it elevates a single component of one incorporated definition over both the operative taxing provision of the Act, which imposes the tax on transfers, and the Act's clearly intended (and, the taxpayers argue, its constitutionally required) prospective operation.[5] The principal purpose of the Act is to create a state estate tax whose calculation parallels the method for calculating the federal estate. But because the operative provision of the Act imposes a tax only prospectively, on the transfer of property, the federal definition of "taxable estate" cannot be used without a modification necessary to conform to the Act: the definition

---

[5] DOR's argument for strict adherence to the statutory definition of "Washington Taxable Estate" is also inconsistent; in carrying out its duty and authority to enact regulations, DOR has modified the definition in the other respects needed to accommodate a state QTIP election. *See* WAC 458-57-105(3)(q), -115(2)(d).

must be read to exclude items that are not transfers. DOR's 2006 regulations made this necessary modification. Given the subject, nature, and purpose of the legislation, the statute and regulation present no ambiguity. They can be plainly read to create a state estate tax scheme which, like its federal counterpart, has a QTIP election that is designed to operate prospectively.

¶38 DOR emphasizes the large marital deduction that was taken in 1984 by the Jim Bracken estate and the growth in the QTIP that will escape state estate taxation in Sharon Bracken's estate, implicitly arguing that these and other estates will enjoy a windfall if the QTIP is not presently taxed. Elimination of the pickup tax went hand-in-hand with changes in federal tax rates that, for these two estates, are substantially reduced. The point is not lost on us; we recognize that because of EGTRRA (and ignoring any other tax planning the wives might have done) the Sharon Bracken estate and other similarly situated estates would be money-ahead even if required to pay state estate tax on the federal deferrals.[6]

¶39 But the Estates and amicus have identified other scenarios, likely to occur, under which DOR's position penalizes taxpayers and produces a windfall for the State. The Barbara Nelson estate points out that when the William Nelson estate made its federal QTIP election, effective in September 2004, the state pickup tax rate was less than 4 percent; by deeming his estate to have made a state deferral election that it never made, DOR subjects QTIP in the Barbara Nelson estate to taxation at the maximum 19 percent tax rate adopted in 2005. Reply Br. of Appellants at 13. The Estates point out that for the estate of a decedent who died during the period in which Washington had no estate tax (from January 1, 2005 to May 17, 2005) and

---

[6] We recognize that there is no guarantee this result will exist in the future, even for similarly situated taxpayers. To deal with its own budgetary issues, Congress may yet impose higher federal estate tax burdens on surviving spouses whose husband or wife elected only federal deferral, not state deferral, prior to 2005.

which elected QTIP treatment for federal purposes, property that would have passed free of state estate tax will be subject, under DOR's view, to taxation in the estate of the surviving spouse—with no ability on the part of the estate to avoid that result. They note that DOR's position will allow it to impose Washington estate tax on gifts, despite Washington having no gift tax, and to tax transfers made years ago by decedents who never lived in Washington, but whose surviving spouse relocated to the state—even if that relocation was only shortly before the death of the surviving spouse.

¶40 We will not be distracted from reasonably construing the Act by DOR's concern about asserted windfalls to some taxpayers. Individuals who elected QTIP treatment for federal tax purposes before May 17, 2005 assumed the risk of what future changes in federal tax law might mean for the deferral. They did not invite or assume the risk of a state reaching into the grave and taxing a transfer 25 years after the fact.

### *"Transfer" versus Washington QTIP as the Basis for Decision*

¶41 We finally and briefly address the position of the concurrence/dissent, which agrees with the outcome of our decision for these two estates but disagrees with the rationale and unfortunately mischaracterizes our discussion of federal tax law. Obviously QTIP is taxed in the estate of the surviving spouse.[7]

---

[7] See discussion *supra* pp. 566-67; for example, "The transfer is taxed later at a time when there is no transfer, by virtue of the deferral election," and "The QTIP was not taxed in [Mr. Bracken's] estate, however, because by virtue of the [deferral] election, his estate was allowed to take the marital deduction on the basis of an explicit fiction that the entire property had passed to her." *Morgens*, 133 T.C. at 412 ("[T]he entire QTIP obtains the deferral benefit of the marital deduction and escapes inclusion in the gross estate of the first spouse to die."); Rev. Rul. 98-8, 1998-1 C.B. 541 (describing I.R.C. sections 2519 and 2044 as acting "to defer the taxable event on the marital deduction property only so long as the surviving spouse continues to hold the lifetime income interest").

¶42 Its principal disagreement is with our insistence on distinguishing between real transfers and deemed, or fictional, transfers—a distinction central to our principled basis for rejecting DOR's interpretation of its 2006 regulations. It is not a contrived distinction. "From its inception, the estate tax has been a tax on a class of events which Congress has chosen to label, in the provision which actually imposes the tax, 'the *transfer* of the net estate of every decedent.' " *Mfrs. Nat'l Bank of Detroit*, 363 U.S. at 198 (quoting 39 Stat. 756, 777).

¶43 As Lily Kahng, a tax professor at Seattle University, has observed:

> In tax, fictions abound. A taxpayer can be in "constructive receipt" of income; foreign taxes can be "deemed paid" by a foreign corporation's U.S. shareholder; "transitory" corporations can be "disregarded" in a corporate reorganization. . . . However, tax fictions can be dangerous. They can mask underlying motives and biases and they can cause unforeseen harms.

Lily Kahng, *Fiction in Tax, in* TAXING AMERICA 26 (Karen B. Brown & Mary Louise Fellows eds., 1996) (footnotes omitted). Ms. Kahng cites Lon Fuller and John C. Gray as "emphasiz[ing] the importance of recognizing that fictions are fictions and warn[ing] that the danger of a legal fiction lay in its user's unawareness of its fictional nature." *Id.* (citing LON FULLER, LEGAL FICTIONS 10-11 (1967); JOHN C. GRAY, THE NATURE AND SOURCES OF THE LAW 37 (1921)). Elsewhere, she points out that one danger of "fail[ing] to recognize the fictional nature of [a] fiction" is the risk of relying on the fiction to trivialize important differences in underlying realities. *See id.* at 29. Here, the concurrence/dissent relies on Ms. Bracken's fictional receipt and transfer of property for federal tax purposes to ignore the fact that for purposes of imposing a state estate tax, she has not received or transferred the property at all.

¶44 Our disagreement with the concurrence/dissent on that score would be academic if the different analysis did not have important ramifications. But it does, as recognized

by the appellants and amicus, each of whom has urged us to recognize the distinction between real and fictional transfers reflected in the Internal Revenue Code and regulations.[8]

¶45 Any rejection of DOR's interpretation of its 2006 regulations must respond to its premise—supported by the language of the Act—that because the Washington taxable estate is based on the federal taxable estate, which includes federally elected QTIP in which the decedent had a qualifying income interest, then Washington estates must also include this federal QTIP unless permitted to subtract it by DOR's regulations. DOR's 2006 regulations, as it interprets them, do not apply and allow federal QTIP to be subtracted if the QTIP is included in the estate as the result of an election made before May 17, 2005. The result is to tax QTIP on which federal tax was deferred (and, by extension, current payment of state pickup tax was avoided) before the law provided for a state QTIP election.

¶46 We respond to DOR's premise by relying on RCW 83.100.040(1), which imposes tax only on transfers; on Laws of 2005, ch. 516, § 20, providing that the Act's provisions apply "prospectively only and not retroactively" and "only to estates of decedents dying on or after [May 17, 2005]"; and on RCW 83.100.040(3), providing that the Act incorporates "only those provisions of the internal revenue code as amended . . . that do not conflict with the provisions of this chapter" and that imposes a tax "independent of any federal estate tax obligation." By adopting a principled analysis that the legislature has not attempted to tax transfers

---

[8] *See, e.g.*, Br. of Appellant Bracken at 20 ("To give effect to the tax deferral, the property is *treated* as having *passed* from the surviving spouse, but the *transfer* occurs, under federal estate tax law and, thus, for purposes of Washington estate tax[,] when the trust was established and the income interest was transferred."), 19-25; Br. of Appellant Nelson at 28-30 (Section F: "Nothing in Federal Tax Law Warrants a Conclusion that the Decedent Transferred the Marital Trust Property."); Br. of Amicus Curiae Mesdag at 8 ("DOR is attempting to tax estate transfers that predate the enactment of Washington's new tax law, ignoring both the Legislature's direction that the tax is to be applied prospectively only, and that it must be interpreted in favor of the taxpayer.").

retroactively, we need not reach the Estates' arguments that such a tax would be unconstitutional.

¶47 The concurrence/dissent, on the other hand, accepts DOR's position that the legislature "could and did" import the federal tax regime even to the extent of taxing transfers, like Mr. Bracken's, that took place in 1984. Concurrence/dissent at 583. But it reasons that the 2006 regulations on their face do not support taxation of federal QTIP in these estates, dismisses DOR's interpretation of its own 2006 regulations to the contrary, and finds additional support for its narrow regulation-based decision on the fact that including federal QTIP in a Washington estate would lead to unequal treatment and absurd results. In asserting that the legislature "could and did" import a definition of transfer that would tax retroactively, the concurrence/dissent implicitly dismisses, without analysis, the Estates' vigorous arguments that such a definition of transfer is contrary to *McGrath* and would offend the United States and Washington Constitutions.

¶48 The distinction between real and deemed transfers is a consequential one, scrupulously recognized in federal statutes, regulations, and case law, and is appropriately the basis of our decision.

## CONCLUSION

¶49 The trial court deferred to DOR's interpretation that the 2006 regulations implicitly do not apply to the Estates even if, on their face, they do. Because the statute and regulations are not ambiguous, deference was not warranted. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627-28, 869 P.2d 1034 (1994). An agency's interpretation that is not plausible or that is contrary to legislative intent is not entitled to deference. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 716, 153 P.3d 846, *cert. denied*, 552 U.S. 1040 (2007). DOR's position improperly imposes estate tax without a present

transfer—contrary to RCW 83.100.040; to the legislature's directive that the Act apply only prospectively; and to *McGrath*, among other authority.

¶50 The trial court's orders granting summary judgment are reversed, and the cases are remanded for entry of judgment in favor of the Estates.

CHAMBERS, OWENS, and STEPHENS, JJ., and ALEXANDER and QUINN-BRINTNALL, JJ. PRO TEM., concur.

¶51 MADSEN, C.J. (concurring/dissenting) — The majority's analysis in this case is incorrect and inadequate to decide when federal qualified terminable interest property (QTIP property[9]) is subject to state estate tax under the Washington Estate and Transfer Tax Act (Act), Laws of 2005, chapter 516. The majority invokes inapplicable principles expressed in cases from the 1930s and 1940s that are outdated in the present context. These cases were decided long before the passage of the more recent federal statutes that govern taxability of QTIP property and are expressly incorporated into the Act.

¶52 The majority also misstates the theory that underlies taxation of QTIP property, maintaining that a "real" transfer of property is required for taxing an estate, that QTIP property does not actually pass to or from the surviving spouse, and that under federal law the transfer on which taxation is based occurs on the death of the first spouse with deferred taxation occurring when the surviving spouse dies.

¶53 This is not how federal law treats QTIP property, as both the relevant Internal Revenue Code sections and

---

[9] I recognize that QTIP means "qualified terminable interest property" and that "QTIP property" could be read as duplicating the word "property." However, the term "QTIP property" is a proper term to refer to the category of property at issue. *See, e.g.*, BORIS I. BITTKER & LAWRENCE LOKKEN, FEDERAL TAXATION OF INCOME, ESTATES AND GIFTS ¶ 129.4 (Deductible Terminable Interests), 1997 WL 440177, at *19, *20, *24 (2012).

applicable case law explicitly show.[10] Unlike the theory proposed by the majority, under federal law there are two relevant transfers where QTIP property is concerned. The first transfer is the interspousal transfer that occurs when the first spouse dies and the entire QTIP property is deemed to pass to the surviving spouse, notwithstanding the fact that the surviving spouse in fact enjoys only a life interest.[11] This transfer is not a taxable event because Congress expressly created the QTIP election so that when this interspousal transfer of property is made, the property is eligible for the marital deduction (despite the fact that terminable interest property is transferred).[12]

---

[10] Estate and gift taxation may involve scenarios more complicated than presented here. It is important to point out that the principles I address apply to a QTIP election by the first spouse's personal representative and a life interest held by the surviving spouse in the property, with any remainder passing to the remainder beneficiaries on the surviving spouse's death. We are not, for example, concerned in this case with generation-skipping transfers or "reverse QTIP elections."

[11] The surviving spouse in actuality obtains only a life interest in the property, but federal estate tax statutes employ the fiction that the entire property passes to the surviving spouse.

12
According to the House Ways and Means Committee, in recommending enactment of § 2056(b)(7):

[The pre-1982] limitations on the nature of interests qualifying for the marital deduction should be liberalized to permit certain transfers of terminable interests to qualify for the marital deduction. Under present [pre-1982] law, the marital deduction is available only with respect to property passing outright to the spouse or in specified forms which give the spouse control over the transferred property. Because the surviving spouse must be given control over the property, the decedent cannot insure that the spouse will subsequently pass the property to his children. Because the maximum marital deduction is limited under present law to one-half of the decedent's adjusted gross estate, a decedent may at least control disposition of one-half of his estate and still maximize current tax benefits. However, unless certain interests which do not grant the spouse total control are eligible for the unlimited marital deduction, a decedent would be forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children. The committee believes that the tax laws should be neutral and that tax consequences should not control an individual's disposition of property. Accordingly, the committee believes that a deduction should be permitted for certain terminable interests.

¶54 Because it qualifies for the marital deduction, the value of the entire property is a *deduction* from the gross estate of the first spouse and the property is deemed to pass to the surviving spouse. This is the whole point of the QTIP election authorized by Congress—to make the interspousal property transfer eligible for the marital deduction and therefore *not taxed*. "The Marital Deduction . . . *excludes from taxability* in the estate of the *first spouse* to die those properties or interests in property used in calculating the gross estate that pass from the decedent to the Surviving Spouse." *Estate of Clayton v. Comm'r*, 976 F.2d 1486, 1500 (5th Cir. 1992) (emphasis added).

¶55 When the surviving spouse dies, a second transfer of the entire property is deemed to occur—the transfer of the property from the surviving spouse to the third party remainder beneficiaries.[13] This transfer of the marital property from the surviving spouse *is* taxed under the federal estate tax laws, as the relevant statutes and case law show.

¶56 It is unclear why the majority believes that it is the first transfer that is the taxable event, but it may be that the majority's theory involves both a carry-over of pre-QTIP law and a misreading of 26 U.S.C. § 2044(c), the Internal Revenue Code provision that unequivocally establishes the second transfer is the taxable transfer of the QTIP property under the federal estate tax laws. In any event, the majority's analysis does not accord with federal law. Under the Act, however, federal law must be given effect.

¶57 Because the majority is wrong about the federal law incorporated in our state Act, the majority is incorrect about how state law should be construed in the two cases before us. The central question is whether federal QTIP property must be included in the estates of surviving spouses who

---

BITTKER & LOKKEN, *supra*, at *17 (alterations in original) (quoting H.R. REP. No. 201, at 156-60 (1981), *reprinted in* 1981-2 C.B. 352, 377-78).

[13] This is also a fictional transfer of the entire property.

die while the Act is in effect and the federal QTIP elections were made by their predeceased spouses' personal representatives before the Act was enacted. The question arises because on its face the definition of "taxable estate" in the Act seems to require that the state taxable estate include property for which a federal QTIP election was made prior to the Act, i.e., delayed *state* taxation of *federal* QTIP property, for which no *state* deduction was ever available.

¶58 Unfortunately, mischaracterizing the relevant "transfer" that gives rise to the federal estate tax starts the majority down the wrong road and results in an analysis that fails to provide a sufficient basis for deciding what QTIP property should be included in the estate of the surviving spouse.[14] The question can, however, be resolved under our usual rules for construing statutes. The court should focus on the Act's provisions that govern the matter of what property must be included in the surviving spouse's estate. Although initially there seems to be ambiguity on this question, it is resolvable when all of the Act's provisions are considered together and harmonized, giving effect to the legislature's incorporation of federal law, the legislature's obvious intent to provide for a QTIP election, and its specific delegation of authority to the Department of Revenue to fill in the interstices of the law. This approach leads to the conclusion that under the law applying in these two cases, the property for which the federal QTIP elections were made prior to the effective date of the Act is not included in the surviving spouses' Washington estates.

¶59 I start with the statutory analysis that the court should apply to resolve these consolidated cases and then explain in more detail why the majority's discussion of the

---

[14] For simplicity's sake and unless otherwise noted, I will refer to a couple consisting of the "first spouse" (who died first and whose personal representative made the QTIP property election) and the "surviving spouse." I assume, for purposes of the analysis, that the QTIP property is passed on the death of the surviving spouse, i.e., that there is still a remainder available on that spouse's death that passes to the remainder beneficiaries.

taxable transfer is deeply flawed, is flatly contradicted by the federal statutes that are incorporated in the Act as well as the provisions of the Act themselves, and fails to adequately resolve the issues raised.

## Analysis

### QTIP Property That Must Be Included in the Estates

¶60 Before the Act existed, William Nelson and Jim Bracken died and their personal representatives made elections on their estates' federal estate tax returns to place property in QTIP trusts. The question in these cases is whether this property must be included in the state taxable estates (Estates) of their surviving wives, Barbara Nelson and Sharon Bracken, who died after the Act was effective.

¶61 This question arises because (1) prior to enactment of the Act there were no provisions for a separate Washington QTIP election (the state estate tax was then a "pickup" tax and did not involve any QTIP elections), (2) the Act says that Washington taxable estate is the same as federal taxable estate (with modifications not relevant here), and (3) federal taxable estate of the surviving spouses begins with the federal gross estate that *includes* the QTIP property that was the subject of the first spouses' personal representatives' federal QTIP elections. Simply put, on the face of it the Act seems to say that in the present cases the Washington taxable estates must include the federal QTIP property notwithstanding the fact that no QTIP election of any kind was ever made for Washington estate tax purposes.

¶62 A court's goal in construing a statute is to determine the legislature's intent by giving effect to the plain meaning of the statute, which may be gleaned from what the legislature has said both in the statute at issue and in related statutes. *Flight Options, LLC v. Dep't of Revenue*, 172 Wn.2d 487, 500, 259 P.3d 234 (2011); *Dep't of Ecology v.*

*Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002). The court considers the ordinary meaning of words, statutory definitions where provided, the context of the statute in which a provision is found, related provisions, and the statutory scheme as a whole. *Bank of Am., NA v. Owens*, 173 Wn.2d 40, 53, 266 P.3d 211 (2011). An attempt will be made to harmonize provisions that appear to be contradictory. *Id.*

¶63 The 2005 Act established a stand-alone tax in response to this court's invalidation of 2001 estate tax legislation, and to a large extent the Act ties state estate taxation to federal law. LAWS OF 2005, ch. 516; *see Estate of Hemphill v. Dep't of Revenue*, 153 Wn.2d 544, 105 P.3d 391 (2005); RCW 83.100.020(3)-(5), (7), (11)-(14); former RCW 83.100.030 (1988); RCW 83.100.040(3). The earlier state law was invalidated because it was contrary to legislative intent of the voters when they passed an initiative establishing the state estate tax as a pickup tax tied to current federal law. *Estate of Hemphill*, 153 Wn.2d at 550-51. The Act is not simply a continuation of prior law.[15] The legislature recognized that it was creating "a stand-alone state estate tax," something that had not previously existed in Washington. LAWS OF 2005, ch. 516, § 1. The Act relies heavily on federal law but "incorporates only those provisions of the internal revenue code as amended or renumbered as of January 1, 2005, that do not conflict with the provisions of" the Act. RCW 83.100.040(3).

¶64 Laws of 2005, chapter 516, section 20 states the Act "applies prospectively only and not retroactively" and then says, "Sections 2 through 17 [the substantive provisions] of this act apply only to estates of decedents dying on or after the effective date of this section." Thus, as in these cases, when the surviving spouse dies after the effective date of

---

[15] Indeed, there was no valid estate tax law in this state to continue since there was no state estate tax from the time *Hemphill* was decided until the effective date of the Act on May 17, 2005. LAWS OF 2005, ch. 516, § 22.

the Act, the Act applies to taxation of the surviving spouse's estate.

¶65 RCW 83.100.040(1) provides the tax rate for the estate tax and directs that the tax is to be imposed on "every transfer of property located in Washington," as well as on a Washington decedent's estate located out of state, but the latter is taxed at a fractional rate. The " 'Washington taxable estate' " is defined in RCW 83.100.020(13) as "the federal taxable estate" less a fixed amount and less any deduction for certain qualifying farmland under RCW 83-.100.046. RCW 83.100.020(14) defines " '[f]ederal taxable estate' " to mean "the taxable estate as determined under chapter 11 of the Internal Revenue Code" with modifications not relevant here.

¶66 Chapter 11 of the Internal Revenue Code[16] contains numerous statutes that direct what must be included in gross estate, how to determine the value of the different types of property included in the gross estate, how to adjust for gifts in contemplation of death, and what may be deducted to reach the taxable estate. I.R.C. §§ 2031-2058.[17] Then, I.R.C. § 2001(a) imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States."

¶67 I.R.C. § 2044 mandates inclusion of the federal QTIP property in the taxable estate of the surviving spouse. Subsections (a) and (b)(1)(A) state that a decedent's gross estate must include QTIP property in which the decedent had a life interest, and subsection (c) provides that this QTIP property "shall be treated as property passing from the decedent," i.e., from the surviving spouse who had the

---

[16] The Internal Revenue Code sections cited in this opinion are found in Title 26 of the United States Code. Thus, for example, I.R.C. § 2001 is 26 U.S.C. § 2001.

[17] Statutes specify amounts that are subtracted from the gross estate to arrive at the taxable estate of a citizen or resident: I.R.C. § 2053 (includes specified expenses and indebtedness), § 2054 (uninsured casualty losses), § 2055 (transfers for public, charitable, and religious uses), § 2056 (marital deduction), § 2056A (qualified domestic trust), § 2057 (family owned business interests), § 2058 (state death taxes).

life estate. This statute plainly calls for including QTIP property in the gross estate of the decedent who, for purposes of this statute, is clearly the surviving spouse—the individual from whom the property is deemed to pass.[18]

¶68 The incorporation of the federal definition of taxable estate as the starting place for determining the Washington taxable estate means that the legislature could and did rely on the extensive and exhaustive detailed federal statutory scheme that contains the directions for what to include in the gross estate (covering a wide range of property kinds, including QTIP property, as explained) and how to value it, and what to subtract in the way of authorized exemptions and deductions, such as for specified expenses, indebtedness, charitable transfers, and so on. *See* I.R.C. §§ 2031-2058 (lengthy, detailed statutes); WAC 458-57-115(2)(b), (c) (2006); *see also* RCW 83.100.040(3) (explicitly mentioning the parallel nature of much of state estate taxation law to federal law). By starting with federal taxable estate, the legislature avoided having to duplicate congressional effort involved in explaining all the possible inclusions, exemptions, and deductions necessary to reach the taxable estate, and also helped to avoid the complication and confusion that a different set of state rules might create.

¶69 The Act authorizes a Washington QTIP election. Provided that the federal taxable estate is determined on the federal return by making an election to treat property as QTIP property or that no federal estate tax return must be filed, "the department may provide by rule for a separate election on the Washington return" for a QTIP election. RCW 83.100.047(1); *see also* RCW 83.100.200 ("[t]he department shall adopt such rules as may be necessary to carry into effect the provisions of this chapter"; "[t]he rules

---

[18] As explained in the second part of this opinion, federal case law holds and secondary authority consistently explains that under I.R.C. § 2044 the QTIP property is taxable as a *transfer* from the surviving spouse. This "fictional" transfer is, among other things, a necessary occurrence for estate taxation of the property as part of the surviving spouse's estate as I.R.C. § 2001 provides and as is necessary for estate taxation.

shall have the same force and effect as if specifically set forth in this chapter, unless declared invalid by a judgment of a court of record not appealed from"). This state QTIP election is "for the purpose of determining the amount of tax due under this chapter." RCW 83.100.047(1).

¶70 Thus, the Act says that the calculation of the surviving spouse's taxable estate begins with the federal taxable estate, which necessarily includes property for which the first spouse made a federal QTIP election. The Act also authorizes a state QTIP election but does not explicitly state how this election is to be considered when determining the taxable estate of the surviving spouse. In fact, the definition of "taxable estate" does not mention a state QTIP election at all.

¶71 But in authorizing a state QTIP election, the legislature obviously meant for the value of property for which a state QTIP election was made to be deducted from the first spouse's estate "for the purpose of determining the amount" of state estate tax due, RCW 83.100.047(1), and it necessarily follows that this property must be included in the surviving spouse's state estate. That is, under the state estate tax scheme, if the representative of the first spouse to die made a state QTIP election under chapter 83.100 RCW, then the property for which the election was made must be included in the gross state estate of the surviving spouse. This is because the purpose of a QTIP election is to defer taxing property until the time the surviving spouse dies, thus allowing for the first spouse's estate to be used by the surviving spouse without reduction by estate taxes and then allowing the remainder to pass to a third party (or parties). *Taxation* of the QTIP property is *deferred*; there is no tax that is deferred, nor is there a taxable event when the QTIP election is made.[19] This is the way that the QTIP

---

[19] This is an important distinction. Taxation of QTIP property does not involve any taxable event when the first spouse dies or later payment of a "deferred tax" when the surviving spouse dies. Rather, the entire QTIP property is deemed to transfer to and from the surviving spouse, and the latter is the fictional transfer

election works under federal law and because federal law is incorporated into our state act, the state QTIP election and estate taxation work the same way.

¶72 The difficulty in construing the terms of the state statutes becomes apparent, however, when one considers how the provisions of the Act apply when a state QTIP election is made, bearing in mind that under the terms of the Act, the same property can be the subject of both federal and state QTIP elections. Under RCW 83.100.020(13) and (14) the "Washington taxable estate" is defined as the federal taxable estate (less certain amounts not bearing on the present discussion). The federal taxable estate of a surviving spouse must include property that was the subject of the federal QTIP election when the first spouse died; i.e., this property is subject to federal estate tax upon the surviving spouse's death.

¶73 Of course, a state QTIP election does not pertain to the federal estate tax return and so would not be reflected in the federal taxable estate. But if a state QTIP election was made by the first spouse's personal representative and no federal election was made, some adjustment must be made with regard to the state QTIP property to assure that the deferral of state estate taxation upon the first spouse's death does not lead to escape from state estate taxation upon the surviving spouse's death.

¶74 Moreover, if the same property is subject to federal and state QTIP elections, it would be nonsensical to think of including the property value twice in the state calculation— once as part of "federal taxable estate" and then again as state QTIP property that must be included in the surviving spouse's estate. The property would be twice included in the taxable estate. Likewise, if a state election is made for only a fraction of the federal QTIP property, including both would also result in potential double taxation of the state QTIP property.

upon the death of the surviving spouse that is the taxable event. The majority seems to misunderstand my position on transfers. I address the matter in the second part of this opinion.

¶75 All of these scenarios would arise if the Act's provisions, and only the Act's provisions, are given full effect. But given the legislature's authorization for a state QTIP election, it is a certainty that the legislature did not intend for "federal taxable estate" (as modified in RCW 83.100.020(13) and (14)) to be the final amount to be used to calculate the state estate tax once when a state QTIP election is available.

¶76 The legislature delegated to the department the authority necessary to fill in the interstices of the law. *See Diversified Inv. P'ship v. Dep't of Soc. & Health Servs.*, 113 Wn.2d 19, 25, 775 P.2d 947 (1989); *see also Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 646, 62 P.3d 462 (2003) (an administrative agency can promulgate rules that fill in gaps in legislation if necessary to effectuate a general statutory scheme). Pursuant to this authority, the department promulgated two rules that implement chapter 83.100 RCW. Each rule explains how the Washington taxable estate is to be determined when QTIP property is involved, WAC 458-57-105 (2006) and WAC 458-57-115 (2006). There is no challenge to the validity of these rules.[20]

¶77 The department's rules mirror the definition of taxable estate from RCW 83.100.020(13) and (14) and then explain how to account for any federal and state QTIP elections that the decedent's personal representative made

---

[20] The majority unfortunately alters my position significantly in its summary. Majority at 574-75. The Act's provisions alone are incomplete on the matter of state QTIP elections and taxation, as I believe I make abundantly clear. We would be hard pressed to guess how the Act is to apply in the absence of either additional legislation or the promulgation of the department's administrative rules. The state law regarding state QTIP elections is simply not set out completely in the Act. Instead, authority was delegated to the department to supplement the Act by rule. The basic problem that ensued was that the department selectively chose which subsections of the rules it had promulgated that it would elect to apply. But nothing in either the Act or the rules themselves supported the way in which the department decided to interpret and apply its own rules. In short, the department failed to implement its own rules as written.

The majority also seems to think my discussion of the Act shows that I believe it permits retroactive taxation. *Id.* at 575. This is simply untrue, and a careful reading of my opinion shows that the contrary is true.

and how to account for QTIP elections made by the predeceased spouse (the first spouse). The Washington QTIP election can be a larger or smaller percentage election than made on the federal estate tax return or a fractional election. WAC 458-57-115(2)(c)(iii)(A) (2006). This choice enables the personal representative "to reduce Washington estate liability while making full use of the federal unified credit." *Id.* The state estate tax is a tax on "the transfer of the entire taxable estate." WAC 458-57-105(2); *see* RCW 83.100.040(1).

¶78 The two rules also contain provisions for determining the Washington taxable estate. The rules provide the same instructions for determining the Washington taxable estate:

(d) **Washington taxable estate.** The estate tax is imposed on the "Washington taxable estate." The "Washington taxable estate" means the "federal taxable estate":

(i) Less one million five hundred thousand dollars for decedents dying before January 1, 2006, or two million dollars for decedents dying on or after January 1, 2006;

(ii) Less the amount of any deduction allowed under RCW 83.100.046 as a farm deduction;

(iii) Less the amount of the Washington qualified terminable interest property (QTIP) election made under RCW 83.100.047;

(iv) Plus any amount deducted from the federal estate pursuant to IRC § 2056(b)(7) (the federal QTIP election);

(v) Plus the value of any trust (or portion of a trust) of which the decedent was income beneficiary and for which a Washington QTIP election was previously made pursuant to RCW 83.100.047; and

(vi) Less any amount included in the federal taxable estate pursuant to IRC § 2044 (inclusion of amounts for which a federal QTIP election was previously made).

WAC 458-57-115(2)(d) (2006).[21] Barbara Nelson and Sharon Bracken are, of course, the "decedents" within the coverage of these rules.

¶79 Taken all together and giving effect to all of the provisions yields the following: The rule provides for removal of the effect of any federal QTIP elections, whether currently made by this decedent or made by a predeceased spouse. *Id.* §§ (iv), (vi). This means that the state estate tax is computed wholly without regard to any federal QTIP election. The rule also deducts from the taxable estate any current state QTIP election made by this decedent. *Id.* § (iii). This has the effect of effectuating a state marital deduction for a current state QTIP election. Finally, the rule provides that the value of state QTIP property for which a state QTIP election was made by the predeceased spouse is to be added to the taxable estate. *Id.* § (v). This has the effect of subjecting the state QTIP property to taxation upon the death of the surviving spouse.

¶80 Thus, as is true for federal law and a federal QTIP election, when *all of their provisions* directing how to compute taxable estate are applied to the Estates, the 2006

---

[21] The second rule, WAC 458-57-105 (2006), explains the nature of estate tax and provides definitions. Subsection (q) directs that "Washington taxable estate" is to be determined in the same way as in WAC 458-57-115(2)(d) (2006):

(q) "Washington taxable estate" means the "federal taxable estate":

(i) Less one million five hundred thousand dollars for decedents dying before January 1, 2006, or two million dollars for decedents dying on or after January 1, 2006;

(ii) Less the amount of any deduction allowed under RCW 83.100.046 as a farm deduction;

(iii) Less the amount of the Washington qualified terminable interest property (QTIP) election made under RCW 83.100.047;

(iv) Plus any amount deducted from the federal estate pursuant to IRC § 2056(b)(7) (the federal QTIP election);

(v) Plus the value of any trust (or portion of a trust) of which the decedent was income beneficiary and for which a Washington QTIP election was previously made pursuant to RCW 83.100.047; and

(vi) Less any amount included in the federal taxable estate pursuant to IRC § 2044 (inclusion of amounts for which a federal QTIP election was previously made).

WAC 458-57-105(3) (2006).

rules provide that a state QTIP election by a deceased spouse's personal representative has the effect of qualifying the property for a marital deduction from the first spouse's estate. The rules also provide for inclusion of the value of this entire property in the state estate of the surviving spouse. Any federal QTIP elections are removed from the calculations for both the first spouse to die and the surviving spouse.

¶81 But although no party challenges the *validity* of these rules, the department gives the rules a very different *interpretation*. Rather than applying all of the rule's provisions to the Estates, the department argues that the adjustments to taxable estate set out in the rules apply only if a state QTIP election is made, and then only *some* of the rules' subsections apply. Under the department's interpretation of the rules, which of the provisions in the rules are to apply depends upon whether the decedent is the first spouse to die or the surviving spouse. If the estate is that of the first spouse, then, the department says, the Washington taxable estate means the federal taxable estate less the amount of the Washington QTIP election and plus the amount of the federal QTIP election. WAC 458-57--105(3)(q)(iii), (iv); WAC 458-57-115(2)(d)(iii), (iv). This, the department says replaces the federal QTIP election with the Washington election. The department then urges that WAC 458-57-105(3)(q)(v) and (vi) and WAC 458-57--115(2)(d)(v) and (vi) set out the adjustments necessary to replace the federal QTIP with the Washington QTIP for the second spouse to die, the surviving spouse.

¶82 The department's interpretation means that the surviving spouse cannot subtract the amount of the predeceased spouse's federal QTIP election unless a state election was also made. According to the department, since no state QTIP election could be made prior to the Act's effective date (and the implementation of QTIP rules by the department), the Estates here are not entitled to remove the federal QTIP property from the calculation of Washington taxable estate.

¶83 The primary problem with the department's interpretation of its rules is that nothing in the rules supports the department's arguments. Both rules plainly start with "federal taxable estate" and then list adjustments to that amount. Neither rule indicates in any way that the directions for calculating the Washington taxable estate apply only if a state QTIP election is made. Nothing in the rules indicates that some of the adjustments apply only to the first spouse to die and others apply only to a surviving spouse.

¶84 The rules also list other amounts to be subtracted, first for a standard amount deductible by any estate and second for a qualifying farm deduction, if any. WAC 458-57--105(3)(q)(i), (ii); WAC 458-57-115(2)(d)(i), (ii). Then the rules list the adjustments with respect to QTIP property. There are no distinctions made in any of the language that suggest that, unlike the first two adjustments, the latter four are not equally available to all estates. The plain language of subsections (q) and (d) of the rules do not support the department's interpretation.[22]

---

[22] The department maintains that WAC 458-57-115(2)(c)(iii)(B) supports its reading of the rules. This section states in full:

Section 2056 (b)(7) of the IRC states that a QTIP election is irrevocable once made. Section 2044 states that the value of any property for which a deduction was allowed under section 2056 (b)(7) must be included in the gross estate of the recipient. Similarly, a QTIP election made on the Washington return is irrevocable, and a surviving spouse who receives property for which a Washington QTIP election was made must include the value of the remaining property in his or her gross estate for Washington estate tax purposes. If the value of property for which a federal QTIP election was made is different, this value is not includible in the surviving spouse's gross estate for Washington estate tax purposes; instead, the value of property for which a Washington QTIP election was made is includible.

The department argues this subsection supports its interpretation of the rules. However, the subsection says that any remaining value of the state QTIP property "must be included" in the surviving spouse's estate, but it does not similarly state that any federal QTIP amount "must" be included under any circumstances. It clarifies that if both elections were made and are different, then the state amount is the correct amount to include. Arguably, this clarification is unnecessary if the federal amount is always removed, but it appears the purpose of this section is not to tell how to make the calculation of Washington taxable estate, but rather to explain the similarities between federal and state law while explaining that if

¶85  The department contends, however, that applying all of the rules' possible subtractions from federal taxable estate is inconsistent with the purpose of the Act to allow for a state QTIP election. When the department promulgated rules in accord with the authorization for a separate state QTIP election, it effectively replaced any federal QTIP election on the state estate tax return with a "separate" Washington QTIP election. This Washington QTIP law is generally applicable law—not law that is sometimes in effect and sometimes not. As the Estates argue, once a state QTIP law was implemented, federal QTIP property elections do not affect taxability of a Washington estate under the 2006 rules.

¶86  This does not mean that the law cannot be changed. But all of the adjustments in the 2006 rules are part of the law that applied at the time the surviving spouses in these cases died.

¶87  Giving effect to the department's implementation of a state QTIP election as defined by its 2006 rules harmonizes the statutes and effectuates the legislature's stated intent to allow a "separate election on the Washington return." RCW 83.100.047(1). Because the state QTIP property is part of the marital deduction from the first spouse's estate, thus escaping taxation at the time of the death of the first spouse to die and requiring inclusion of the QTIP property in the estate of the surviving spouse, only the state QTIP property is to be included in the surviving spouse's estate.

¶88  The statutory provision requiring the calculation of the estate to begin with the federal taxable estate is still given effect. As mentioned, beginning with the federal taxable estate greatly simplifies state law and the determination of taxable estate by taking advantage of all the federal legislation on the subject (e.g., how to calculate gross estate, what property must be included and how it is

both elections are made, and are different, only the Washington QTIP election "must" be included in the surviving spouse's estate.

to be valued, what exemptions and deductions can be used). A very great deal more is involved with beginning with federal taxable estate than just the taxing of federal QTIP property. The state law must be construed, however, to remove the effect of the prior federal QTIP election from the Washington determination of the state estate. This is what the 2006 WACs did. They effectuated the direction to implement a state QTIP election and conform it to the Act's provisions.

¶89 Once a statute's provisions are construed, they always mean the same thing. The same is true of the agency rules promulgated pursuant to a delegation of legislative authority. *Cf. Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 51-52, 239 P.3d 1095 (2010) (rules of statutory construction apply to administrative rules). If the first spouse died before the Act was effective, therefore, the same analysis under the Act and supplementing agency rules must apply as applies when the first spouse died after the Act's effective date. No federal QTIP election made on a federal return prior to the Act is a "separate election on the Washington return" as contemplated in RCW 83.100-.047(1), and therefore, and to provide a consistent construction of the Act and the rules, no federal QTIP property should be included in the surviving spouse's Washington estate.

¶90 Moreover, including federal QTIP property in the Washington estate can result in unequal treatment of comparably situated surviving spouses' estates and in absurd results. In construing statutory provisions, a court construes them to effect their purpose and to avoid unlikely or absurd results. *Thompson v. Hanson*, 168 Wn.2d 738, 750, 239 P.3d 537 (2009).

¶91 First, imagine two couples. The first spouse of the first couple dies a month before the Act is effective, and the personal representative makes a $10 million QTIP property election on the federal estate tax return with, of course, no possible Washington election because there was no state

estate tax act in effect at that point. The first spouse of the second couple dies a month after the Act is effective and makes a $10 million federal QTIP property election and a $1 million state QTIP election. Imagine the surviving spouses die two months after the Act is effective and therefore the Act applies to their estates, and imagine neither surviving spouse has made an inter vivos disposition of the QTIP property.

¶92 If the federal QTIP property must be included in the first situation, the state estate of the surviving spouse includes $10 million in property subject to state estate taxation. In the second instance, however, because a Washington QTIP election was made as a "separate election on the Washington return" by the first spouse, which must be included in the second estate, only the $1 million state QTIP property would be included in the state estate of the surviving spouse. The unequal treatment is obvious, and unlikely to be the intended result of the Act's provisions.[23]

¶93 Second, imagine a couple living in Nevada where the personal representative of the first spouse to die makes a QTIP election on the federal estate tax return in 2002, placing nearly all of the couple's considerable assets into a QTIP trust. No Washington estate tax is implicated at all, in any way. The trustee is a Nevada resident and holds the cash and securities constituting the trust assets. In 2004, the surviving spouse moves to Washington, to be cared for by a relative, and dies in 2007 after the Act's 2005 enactment. If the federal QTIP election means that the QTIP property must be included in the surviving spouse's Washington estate, then all of the QTIP assets would be subject to state estate taxes, even though there never could have been any Washington estate tax on the first spouse's estate

---

[23] I specifically do not consider whether such a result may nonetheless be a constitutional result. Obviously, whenever tax laws are changed they affect different taxpayers differently before and after the effective date of the changes. But nothing in the law as supplemented by the 2006 rules indicates legislative intent favoring results such as the ones I hypothesize.

in the absence of the QTIP election and so no deferral of state estate taxes by virtue of the QTIP election.

¶94 This also appears to be a strained result under the law existing when the surviving spouses died and does not appear to reflect the purposes of the state QTIP election and the legislature's plain intent to provide a stand-alone act that allows a separate Washington state QTIP election on the Washington estate tax return.

¶95 The same kind of result ensues when both spouses are Washington residents at all times. A federal QTIP election prior to the Act does not allow a state marital deduction and deferral of state estate taxation of the property upon the first spouse's death, and it is absurd to conclude that the federal QTIP property should be included in the surviving spouse's estate to enable imposition of a state tax where there was no deferral of state estate taxation on any QTIP property.

¶96 I would hold that construing the provisions of the Act as a whole and as supplemented by the 2006 rules leads to the conclusion that only Washington QTIP property is to be included in the Washington taxable estate of the surviving spouse and the federal QTIP property, if any is included in the federal taxable estate, must be subtracted from a Washington taxable estate regardless of when the federal QTIP election was made. The 2006 regulations on their face and according to their plain language effectuate the obvious purpose of the legislature's determination to allow a state QTIP election: the surviving spouses' estates are not subject to state estate taxation on federal estate QTIP elections that did not benefit the first spouses' estates on any state estate tax returns by allowing a state marital deduction when the first spouses died.

¶97 The Estates properly excluded the federal QTIP property when computing their state taxable estates. I add, however, that the Act's provisions are subject to amendment if the legislature wishes a different approach. The only bar, of course, is that to be enforceable any modifica-

tions of the statutes would have to be constitutional as is always true of legislative enactments. I do not believe, though, that the present cases require reaching the constitutional claims of the Estates.

*"Transfer"*

¶98 The majority incorrectly proceeds on a theory that only one transfer of QTIP property ever occurs that is relevant to taxation, i.e., the transfer from the first spouse when the QTIP election is made. Under the majority's theory, this "transfer is taxed later at a time when there is no transfer, by virtue of the deferral election." Majority at 567. The majority states that "[a]s with federal law and regulation," the "Washington regulations provide that if a QTIP election is made, the surviving spouse 'must include the value' " of QTIP property in the surviving spouse's state estate "even though the surviving spouse makes no transfer." *Id.* at 560 (quoting WAC 458-57-115(2)(c)(iii)(B) (2006)). The majority declares that the transfer of QTIP property is made by the electing spouse and not the surviving spouse: "[*t*]*ransferred by the* [*e*]*lecting* [*s*]*pouse*,"[24] and "[*n*]*ot the* [*s*]*urviving* [*s*]*pouse*." *Id.* at 566.

¶99 In short, the majority thinks that the taxable transfers in these cases occurred on the husbands' deaths prior to the effective date of the new Washington estate Act. The majority believes that any state taxation of federal QTIP property in the wives' estates when they died after the Act became effective would be an improper retrospective application of the Act.

¶100 The majority's theory is absolutely incorrect and appears to result from a misreading of the applicable federal statutes. The federal statutes apply because the Act "incorporates . . . those provisions of the internal revenue code as amended or renumbered as of January 1, 2005, that

---

[24] Actually, this spouse's personal representative makes the election.

do not conflict with the provisions of this chapter." RCW 83.100.040(3). RCW 83.100.040(1) provides for an estate tax on "every transfer of property located in Washington." "Transfer" is a defined term under our state Act and "means 'transfer' as used in section 2001 of the Internal Revenue Code." RCW 83.100.020(11).

¶101 Thus, we must turn to federal law on the question of taxable transfers.

¶102 This federal law is unequivocal. I.R.C. § 2056 addresses "taxable estates" and describes the effect of bequests to surviving spouses and related matters. It describes the allowance for the marital deduction, § 2056(a), declaring in relevant part that "the value of the taxable estate" is to "be determined by deducting from the value of the gross estate an amount equal in value to the value of any interest in property" passing "from the decedent to his surviving spouse." One of the types of property qualifying for the marital deduction is " 'qualified terminable interest property,' " i.e., QTIP property, which is property "which passes from the decedent" and "in which the surviving spouse has a qualifying interest for life." I.R.C. § 2056(b)(7)(B)(i)(I), (II).

¶103 In this statute the reference to "decedent" is to the first spouse to die whose personal representative is making a QTIP election, and "surviving spouse" is the decedent's husband or wife. I.R.C. § 2056 concerns the *transfer* of QTIP property that is deemed to pass the entire property to the surviving spouse, although actually the surviving spouse receives only a life interest. Thus, I.R.C. § 2056 describes the necessary fictional interspousal transfer of the entire property from the first spouse who dies to his or her surviving spouse. Without this transfer, the property could not qualify for the marital deduction—which requires the transfer of property to one's surviving spouse.

¶104 I.R.C. § 2044 is the federal statute describing the second necessary transfer. The majority appears to misread this statute or fails to give it effect. I.R.C. § 2044(a) and (b)

state that QTIP property must be included in the surviving spouse's gross estate.[25] The statute requires inclusion of the property in the surviving spouse's estate because this property qualified for the marital deduction from the gross estate of the first spouse to die by virtue of qualifying as QTIP property transferred to the surviving spouse.

¶105 The next part of I.R.C. § 2044 says that "property includible in the gross estate of the decedent under subsection (a) shall be treated as property *passing from the decedent.*" I.R.C. § 2044(c) (emphasis added). The "decedent" referred to is still the surviving spouse who had the life interest and who must include the QTIP property in his or her gross estate. This is the second necessary fictional transfer, and this transfer is the one that results in the QTIP property being subject to estate taxes.

¶106 In short, I.R.C. § 2056 concerns the marital deduction for QTIP property, and the "deemed" transfer of the entire property to the surviving spouse, and I.R.C. § 2044 concerns the "deemed" transfer of the entire property from the surviving spouse.

¶107 The first transfer is a transfer between spouses. Most interspousal transfers, including those involving QTIP property, qualify for the marital deduction. Because of the marital deduction, a "decedent's taxable estate does not usually include property transferred to the surviving spouse." *Estate of Herrmann v. Comm'r*, 85 F.3d 1032, 1035 (2d Cir. 1996). The second transfer is a transfer that does not occur between spouses. Unlike the transfer that is deemed to occur from the first spouse to the surviving spouse if the QTIP election is made, the transfer from the surviving spouse is the taxable transfer of the marital

---

[25] The statute states, "The value of the gross estate shall include the value of any property to which this section applies in which the decedent had a qualifying interest for life" where "a deduction was allowed with respect to the transfer of such property *to* the decedent" pursuant to "section 2056 by reason of subsection (b)(7)." I.R.C. § 2044(a), (b)(1)(A) (emphasis added). The statute refers to "decedent" to mean the surviving spouse; i.e., the "decedent" is the individual who has had the "qualifying income interest for life."

property and is deemed to occur upon the surviving spouse's death. In addition, the transfer of property is the taxable event that triggers imposition of federal estate taxes. Unless there is a transfer of property, no estate tax can be imposed.

¶108 The marital deduction is central to the QTIP election and to the correct understanding of the term "transfer" in the circumstances here. "The assets left outright to a spouse are not subject to estate tax because of the marital deduction, which generally exempts from tax assets left to a spouse or to a trust for a spouse's benefit." *Alan Baer Revocable Trust v. United States*, No. 8:06CV774, 2010 WL 1233917, at *5, 2010 U.S. Dist. LEXIS 27471, at *14 (D. Neb. Mar. 23, 2010) (unpublished). However, an "interest passing to the surviving spouse that may terminate or fail on the occurrence or nonoccurrence of an event or contingency, such as a life estate" does not qualify for the marital deduction, "unless the interest qualifies for treatment as a qualified interest in terminable property," i.e., QTIP property. *Id.* Just as in the case of assets left outright to a spouse, QTIP property is not included in the taxable estate of the first spouse but instead is given the same treatment as a marital deduction from the taxable estate.

¶109 Under federal law the underlying assumption of the QTIP regime

> [is] that the entire QTIP is first deemed to pass to the surviving spouse and *the surviving spouse, in turn, is deemed to transfer the QTIP either at his or her death or inter vivos*. Because of such deemed *ownership of QTIP and inclusion in the transfer base* of the *surviving spouse*, the first spouse is permitted to exclude the entire QTIP from the estate tax base of the first spouse to die.

*Estate of Morgens v. Comm'r*, 133 T.C. 402, 420 (2009) (emphasis added), *aff'd*, 678 F.3d 769 (9th Cir. 2012); *id.* at 418 ("the underlying premise [is] that the surviving spouse is deemed to receive and then give (or pass at death) QTIP property, other than her life interest"). As the above passage

recognizes, unless the QTIP property is included in the *transfer base* of the surviving spouse, the QTIP property cannot be a marital deduction excluded from the first spouse's estate.

¶110   Thus, contrary to the majority's theory, the taxable transfer does not occur on the transfer from the first spouse to die. There is no taxable transfer at that point because the property is qualified for the marital deduction and is *not* subject to estate taxes at all when the first spouse dies. Rather, the property is treated as having transferred to and thus belongs to the surviving spouse and is taxed as a transfer from that spouse when disposed of at death or during his or her life if an inter vivos disposition is made. The marital deduction is provided for in I.R.C. § 2056, which "allows the estate to deduct certain property which the decedent bequeathed to his or her spouse. Property which qualifies for the 'marital deduction' is not taxed until the surviving spouse dies." *Estate of Ellingson v. Comm'r*, 964 F.2d 959, 960 (9th Cir. 1992).

> The basic principle underlying the marital deduction—that property qualifying for the deduction, unless consumed, will be taxed when transferred by the surviving spouse during life or at death—is effectuated for QTIP by two provisions: Section 2519 [26 U.S.C. § 2519] treats a lifetime transfer of the spouse's income interest in QTIP as including a gift of the remainder, and under § 2044 [26 U.S.C. § 2044], the property is included in the spouse's gross estate if the income interest is held until death. Because the marital deduction is allowed for entire value of QTIP, even though the surviving spouse may have no more than the right to income from the property, the gift and estate taxes are applied to the spouse essentially *as though* the income interest comprised *outright ownership of the property.*

BORIS I. BITTKER & LAWRENCE LOKKEN, FEDERAL TAXATION OF INCOME, ESTATES AND GIFTS ¶ 129.4 (Deductible Terminable Interests), 1997 WL 440177, at *22 (2012) (emphasis added). Contrary to the majority's position, it is the transfer *from* the surviving spouse that is the taxable event— *this* is

the relevant transfer. The fundamental principle is that "[i]f an election is made to take the estate tax marital deduction for a transfer in trust of qualified terminable interest property (QTIP), the trust assets remaining on the death of the surviving spouse are included in the spouse's gross estate." BITTKER & LOKKEN, *supra*, ¶ 133.2, 1997 WL 440177, at *2.

¶111 As the Eleventh Circuit Court of Appeals explained, Congress had two goals in enacting the QTIP statutes: "expanding the marital deduction to provide for the spouse while granting the decedent more control over the ultimate disposition of the property, and treating a husband and wife as one economic entity for the purposes of estate taxation." *Estate of Shelfer v. Comm'r*, 86 F.3d 1045, 1050 (11th Cir. 1996).

> The statute's second goal, treating a married couple as one economic entity, was effected in a comprehensive statutory scheme. In addition to the QTIP provisions of § 2056(b)(7), Congress added § 2044, which requires the estate of the surviving spouse to include all property for which a marital deduction was previously allowed, and § 2056(b)(7)(B)(v), which states that a QTIP "election, once made, shall be irrevocable." Taken together, these sections of the code provide that assets can pass between spouses without being subject to taxation. Upon the death of the surviving spouse, the spouse's estate will be required to pay tax on all of the previously deducted marital assets.

*Id.* (emphasis added) (footnote omitted).

¶112 In *Turner v. Commissioner*, 2012 WL 1058162, at *9, 2012 U.S. Tax Ct. LEXIS 15, at *26-27, the court similarly explained that I.R.C. §§ 2044 and 2519, the former providing for inclusion of the QTIP property in the surviving spouse's estate and the latter addressing lifetime transfers of the QTIP property, "ensure that taxation of the transfer of the QTIP remains consistent with the basic policy of the marital deduction, namely that either gift tax or estate tax applies (subject to the applicable exemptions) *when the*

*property leaves the marital unit."* (Emphasis added.) *See also Estate of Morgens*, 678 F.3d at 771 ("[t]he purpose of the QTIP regime is to treat the two spouses as a single economic unit with respect to the QTIP property while still allowing the first-to-die spouse to control the eventual disposition of the property").

¶113 This transfer to and from the surviving spouse is a transfer of the entire value of the property, not just the value of the life income interest. "[F]or the purposes of estate taxes, the entire property is treated as if it passed to the surviving spouse (and, consequently, nothing to the remaindermen)—even though the surviving spouse actually possesses only the income interest. [I.R.C.] § 2056(b)(7)(A)." *Estate of Morgens*, 678 F.3d at 771 ("the surviving spouse is deemed to receive and then give the entire QTIP property, rather than just the income interest"); *Estate of Higgins v. Comm'r*, 897 F.2d 856, 859 (6th Cir. 1990) ("[t]he entire property, the life interest as well as the remainder, is treated as passing to the surviving spouse"). The reason that the entire property is deemed to transfer to the surviving spouse is so that "the marital deduction of § 2056(a) applies to the entire QTIP property." *Estate of Morgens*, 678 F.3d at 771; *see also Estate of Higgins*, 897 F.2d at 859.

¶114 In short, contrary to the majority, there is *no taxable transfer* at the time of the first spouse's death and no estate tax due or payable that can be deferred to a later time. Instead, the estate of the first spouse altogether avoids a taxable event involving the QTIP property when the personal representative makes the QTIP election and the estate of the first spouse takes the marital deduction. The QTIP election involves a transfer of the QTIP property to the surviving spouse after it is deducted from the first spouse's estate with no taxes due or payable upon the death of the first spouse. The property is taxed as a transfer only upon death of the surviving spouse or when it is disposed of inter vivos, in which case it is subject to gift taxes payable by the surviving spouse upon the transfer.

¶115 The same is true under the Act because, as explained, our state estate tax scheme incorporates the federal law. Under the federal law that the Washington statute expressly incorporates, QTIP property is deemed to pass from the first deceased spouse to the surviving spouse (and is not taxed in the estate of the first spouse to die but instead qualifies for the marital deduction) and then is transferred to the remainder beneficiaries when the surviving spouse dies (unless there is an inter vivos transfer), and it is the latter transfer of the property that subjects it to estate (or gift) tax.

¶116 Aside from its apparent misreading of the federal statutes, the majority relies on cases from the 1930s for its conclusion that an estate tax may be imposed only when there has been a "real" transfer of property and for property placed in a QTIP trust a transfer from the trust occurs when the trust is created, not when the surviving spouse dies. Majority at 566-67. The majority says that "[p]roperty is transferred from a trustor when a trust is created, not when an income interest in the trust expires. QTIP does not actually pass to or from the surviving spouse." *Id.* at 566 (citation omitted) (citing *Coolidge v. Long*, 282 U.S. 582, 605, 51 S. Ct. 306, 75 L. Ed. 562 (1931)). *Coolidge* long precedes Congress's enactment of laws permitting QTIP property to qualify for the marital deduction and transfers that are deemed to occur so that this goal can be achieved. Both federal law and state law accept the fiction that a transfer occurs to and from the surviving spouse; i.e., a transfer is deemed to take place when the surviving spouse dies and this is the transfer that results in the QTIP property being taxed as part of the gross estate of the surviving spouse.

¶117 Whether a "real" transfer of the property occurs and whether control of trust assets[26] is in the hands of the surviving spouses is not the relevant question. As the majority itself urges at some length (and apparently in the

---

[26] Not all QTIP assets are placed in trust and there is no requirement that they be:

mistaken belief that I disagree), taxation involves fictions. Clearly, both the transfers from the first spouse and from the surviving spouse are fictional to some degree. But whether fictional or "real," the relevant transfer is the transfer that occurs upon the surviving spouse's death. At this point, taxability of transfer of the marital property occurs, not when the interspousal transfer of property occurs that qualifies for the marital deduction.

¶118 Prior to the 2005 enactment of the Act, there was no state QTIP election in this state. With its enactment, there is now a state QTIP election and at the same time a statutory definition of "transfer." This court must either effectuate the legislature's definition or exceed its judicial authority and redefine "transfer." Unfortunately, the majority takes the latter course, consisting of its theory that the taxable transfer is distinguished from a deferred payment date. As explained, this is not the federal theory of QTIP property, it does not reflect the federal definition of "transfer," and the majority utterly fails to implement the theory of taxation that our state statutes expressly incorporate.

¶119 Washington's Act states that the tax is imposed on "every *transfer* of property located in Washington." RCW 83.100.040(1) (emphasis added) (the statute also provides for a fractional tax on property of the decedent's estate that is outside the state, RCW 83.100.040(2)(b)). For property to be includable in the Washington taxable estate, under this statute it must have been "transferred"; this is also a requirement, in general, for any estate tax to be imposed.

¶120 Under the Act, there is no more a "real" transfer of state QTIP property to the surviving spouse or from the surviving spouse (or surviving spouse's estate) than there is

---

*Nontrust QTIP transfers.* Although most QTIP transfers are probably in trust, neither § 2056(b)(7) nor § 2523(f) is limited to transfers in trust; indeed, neither provision distinguishes between trusts and other types of transfers. For example, a bequest of a personal residence or family farm to the surviving spouse for life, remainder to the children, can qualify for a QTIP election.

BITTKER & LOKKEN, *supra*, 1997 WL 440177, at *21.

a "real" transfer of property that was the subject of a pre-Act federal QTIP election. In both instances, because the property does not truly and actually pass from the surviving spouse to the remainder beneficiaries, the transfer that is taxed via estate taxes when the surviving spouse dies must be deemed to have occurred under state law, just as it is under federal law. (This follows from the principle that once the term is given meaning (which is the same as the federal definition), that meaning applies throughout unless the legislature says otherwise.) There is no state estate tax imposed on this property at the death of the first spouse. Rather, just as is true under the federal estate laws, the property is deducted from the first spouse's estate.[27]

¶121 The majority's mistaken analysis results from a misreading of (or disregard for) the federal statutes that are incorporated in the state Act. The majority's focus on an inapplicable definition of "transfer" of assets leads it to a mistaken view of taxability. The meaning of "transfer" is important in the sense that a "transfer" must occur for the estate tax to be imposed under the federal regime and, therefore, under our state Act's provisions. The relevant statutes plainly identify the taxable transfer as the transfer that is deemed to occur from the surviving spouse upon death to the third party residuary interest beneficiaries. The interspousal transfer from the first spouse is not a taxable event because of the marital deduction.

¶122 Identifying the taxable transfer does not wholly resolve the issue in this case, however. The resolution of this case demands an analysis of what property is includible in the surviving spouse's state estate when a pre-Act federal QTIP election was made by the predeceased spouse. This requires construing the terms of the Act and the 2006 rules.

---

[27] The amount of the deduction is the value of any interest in property that passes or has passed from the decedent to the surviving spouse, to the extent that such interest is included in determining the value of the decedent's gross estate. I.R.C. § 2056(a).

¶123 Under these laws, the pre-Act federal QTIP elections have no bearing on the surviving spouses' estate taxes because there is no amount added to the surviving spouses' estates that is attributed to the pre-Act federal QTIP elections—indeed, the amount that represents the pre-Act federal QTIP election that is included in "federal taxable estate" is, under the applicable 2006 state rules, subtracted from the state taxable estate. This being the case, there is also no issue of any retroactive application of the Act or the federal law that it incorporates. Moreover, because the relevant transfers from the surviving spouse are deemed to occur upon this spouse's death, after the Act was enacted, no retroactivity concerns arise. The majority's discussion of what constitutes the taxable transfer is simply incorrect and unnecessary.

¶124 In short, and contrary to the majority's pervasive theme, there is no deferred tax. Rather, when the first spouse dies there is no tax due or imposed because the value of the QTIP property is a deduction from the estate. When the surviving spouse dies, the QTIP property is taxable.

## Conclusion

¶125 I would hold that the legislature's statutory authorization of a state QTIP election and the provisions of the Act as a whole preclude inclusion of federal QTIP property in a surviving spouse's Washington taxable estate, if the federal QTIP election was made before the Act became effective. I would conclude that based on the Act's provisions the department's 2006 regulations provided that only state QTIP property is to be deducted from the first spouse's state estate and only state QTIP property is to be included in the state estate of the surviving spouse when the predeceased spouse made a federal QTIP election prior to the effective date of the Act. These rules appear well within the department's delegated power and their validity is not challenged here.

¶126 The majority's analysis of what constitutes a "transfer" is incorrect and fails in any event to resolve the issue posed in these cases.

¶127 I would reverse the trial court. I agree that the Estates properly excluded from their taxable state estates the property for which federal QTIP elections were made prior to enactment of the 2005 Washington Estate and Transfer Tax Act.

C. JOHNSON and FAIRHURST, JJ., concur with MADSEN, C.J.

Reconsideration denied January 10, 2013.