# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| U.S. BANK, personal representative of the ESTATE OF ELAINE B. GREEN-ELDRIDGE,<br><br>          Respondent,<br><br>    v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF REVENUE,<br><br>          Appellant. | No. 70514-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br>FILED: November 2, 2015 |

APPELWICK, J. — The Estate filed a petition for relief against the DOR seeking a refund of Washington estate taxes that it paid on the value of a QTIP included in the Estate's federal taxable estate. After the Washington Supreme Court's decision in In re Estate of Bracken, 175 Wn.2d 549, 290 P.3d 99 (2012), the trial court granted summary judgment for the Estate. The DOR did not comply with the order and instead filed this appeal. Retroactive amendments to the Estate and Transfer Tax Act, chapter 83.100 RCW, which made the tax applicable to the QTIP and reversed the effect of the Bracken decision, became law while this appeal was pending and apply to the Estate. Hambleton upheld the constitutionality of those amendments. In re Estate of Hambleton, 181 Wn.2d

802, 335 P.3d 398 (2014), petition for cert filed, 83 U.S.L.W. 3905 (U.S. June 5, 2015) (No. 14-1436). We reverse.

BACKGROUND

Under federal estate tax law, Congress provides a deduction for qualified terminable interest property (QTIP). Hambleton, 181 Wn.2d at 811; I.R.C. § 2056(b)(7). A QTIP is property in a testamentary trust created by a deceased spouse for the benefit of the surviving spouse. Hambleton, 181 Wn.2d at 811. The result of the deduction is that the spouse who dies first controls the final disposition of the property, while allowing the surviving spouse to use the property or receive the income it generates, unreduced by front end taxation. Id. Typically, terminable interests, such as life estates, do not qualify for a marital tax deduction. Id. However, Congress created an exception for QTIP assets. Id. The transfer of property is taxed only when the surviving spouse dies and the ultimate beneficiaries become present interest holders, not when the first spouse dies and creates the QTIP trust. Id.

The Washington Legislature enacted a stand-alone estate tax, the Estate and Transfer Tax Act (ETTA), LAWS OF 2005, ch. 516 § 1, and modeled it after this federal estate tax regime. Id. at 810. The 2005 act imposed a tax on "every transfer of property located in Washington" and applied prospectively to estates of decedents dying on or after May 17, 2005. LAWS OF 2005, ch. 516, §§ 3(1), 20, 22.

The issue of the taxability of QTIP property under the ETTA reached the Washington Supreme Court in Estate of Bracken, 175 Wn.2d at 553-54. The electing spouses' estates made QTIP elections under federal law before Washington enacted its stand-alone estate tax. Id. at 556. Washington had no provision for a similar election

2

which would defer taxation on a QTIP. Id. The surviving spouses who took a life estate in the QTIP died after the legislature passed the ETTA. Id. at 553-54. In order to tax the QTIP, the Washington State Department of Revenue (DOR) argued that a taxable transfer occurred under the ETTA when the surviving spouse died (after the ETTA came into effect) and the property was transferred to the identified beneficiaries. Id. at 561.

The Washington Supreme Court held that the DOR overstepped its authority by adopting regulations that taxed QTIP assets when the QTIP-electing spouses died before the effective date of the 2005 act. Id. at 553-54. The Bracken court interpreted "transfer" in the ETTA narrowly and reasoned that the only "transfer" occurred at the death of the first spouse when the QTIP trust was originally created—not at the death of the surviving spouse. Id. at 553-54, 564, 566-67. The result of the decision in Bracken was that the DOR could not tax the QTIP trusts created by spouses dying before the ETTA went into effect, because the electing spouses could not and did not make a state QTIP election. Id. at 554. Nor could it tax the QTIP on the death of the surviving spouse, because that was not a "transfer" under the ETTA. Id. at 554, 566.

The Washington Legislature responded to the decision in Bracken. See LAWS OF 2013, 2d Spec. Sess., ch.2, § 1(2), (3). On June 12, 2013, in the second special session of 2013, the legislature introduced HB 2075 amending the ETTA (2013 Amendments).[1]

---

[1] Following Bracken, on April 16, 2013, during the 2013 regular session, the Washington House of Representatives passed EHB 1920. H.B. Rep. on Engrossed H.B. 1920, H. COMM. ON FINANCE (Wash. 2013). EHB 1920 was a request bill from the DOR that would have reversed Bracken retroactively. Id. It specifically reacted to Bracken and was intended to clarify that a "transfer" for purposes of the Washington estate tax is broadly defined and that QTIP is properly included in the Washington taxable estate of the surviving spouse. Id. However, the bill failed to pass the Senate before the end of the regular session. 2 LEGISLATIVE DIGEST AND HISTORY OF BILLS, 63d Leg., at 279-80 (2d ed., Wash. 2013-14).

LAWS OF 2013, 2d Spec. Sess., ch. 2. The 2013 Amendments provided for the taxation of QTIP assets upon the death of the surviving spouse. Id. at § 1. Specifically, the legislature disagreed with the Bracken court's narrow interpretation of "transfer" and noted that under the federal estate tax code "transfer" is "construed broadly and extends to the 'shifting from one to another of any power or privilege incidental to the ownership or enjoyment of property' that occurs at death." Id. at § 1(3) (quoting Fernandez v. Wiener, 326 U.S. 340, 352, 66 S. Ct. 178, 90 L. Ed. 116 (1945)). The legislature stated that the amendments would apply both prospectively and retroactively to all estates of decedents dying on or after May 17, 2005. Id. at § 9. The 2013 Amendments to the ETTA were passed by the House and the Senate on June 13, 2013. Id. at § 14. The next day, the governor signed the bill into law with an effective date of June 14, 2013. Id.

## FACTS

Turning to the facts of this case, Joshua Green Jr. died in Washington on October 18, 1985. Green's will provided for the establishment of a lifetime trust for his wife, Elaine Green-Eldridge. After Joshua's[2] death, his estate created an irrevocable marital trust for Elaine in the amount of $8,953,526. The trust provided Elaine a lifetime income interest terminating at her death with the net income from the trust then paid to other beneficiaries. Joshua's estate prepared a tax return. His estate made an irrevocable federal election under IRC § 2056(b)(7)—a QTIP election. Joshua's estate also filed a Washington estate tax return, but did not make a state QTIP election, because no election was available at

---

[2] We refer to Green and his wife by their first names for the sake of clarity. No disrespect is intended.

4

the time. Joshua's estate paid all taxes due, and it received both federal and state final tax clearance.

Elaine died on December 23, 2005. Her will named U.S. Bank as the personal representative of her "Estate." During the course of probate administration, the Estate filed a federal tax return. The Estate included the marital trust in the federal gross estate, because Joshua's estate made the QTIP election deferring tax liability until his wife's death. And, on September 25, 2006, U.S. Bank deposited $10,650,000 with the DOR as an estimated payment of Washington estate tax. The Estate filed a Washington estate tax return on March 21, 2007. In the return, the Estate reduced the taxable estate by the value of Joshua's QTIP. The Estate calculated the net Washington Estate tax to be $1,851,380. The tax return calculated a refund due Elaine's Estate in the amount of $8,798,620. The DOR refunded the Estate $169,456, but did not refund any state estate tax attributable to the QTIP.

Consequently, the Estate filed a tax refund application with the DOR. In the application, the Estate requested a final refund of state estate taxes in the amount of $8,629,164—the original deposit amount less the refund check already issued and less the amount of estate tax calculated by the Estate. The DOR denied the application and issued a final closing letter on April 17, 2009. In response to the DOR's denial letter, the Estate requested an internal administrative review of the DOR's decision, but the DOR upheld the revenue officer's decision.

On May 15, 2009, U.S. Bank filed a petition for relief regarding overpaid Washington state estate taxes against the DOR. It asserted that the termination of Elaine's life interest in the marital trust at the time of her death is not a taxable transfer

5

subject to the Washington estate tax. Consequently, it requested a refund of Washington state estate tax deposits under chapter 83.100 RCW in the amount of $8,629,164.

On October 29, 2010, the case was stayed by agreement of the parties pending a decision by the Washington Supreme Court's in Bracken. The Washington Supreme Court issued its opinion in Bracken on October 18, 2012. Estate of Bracken, 175 Wn.2d at 549.

On April 12, 2013, following Bracken, the Estate moved for summary judgment. It argued that the Washington Supreme Court's ruling in Bracken was binding on the court and that the DOR cannot tax pre-May 17, 2005 QTIP elections—Joshua's QTIP election—after the enactment of the stand-alone estate tax. Consequently, the Estate sought a refund of the state estate tax overpayment.

On May 14, 2013, the trial court granted the Estate's motion for summary judgment. Bracken was the controlling law; the legislature had not yet enacted a bill amending the ETTA. The trial court also ordered the DOR to pay the refund within 10 days of the entry of the order. It did so despite the DOR's request that the refund not be due for 30 days so that it could appeal the trial court's decision if and when a bill amending the ETTA was enacted into law within that period.

The DOR appealed the order on June 13, 2013. The 2013 Amendments to the ETTA were passed by the House and the Senate that same day. LAWS OF 2013, 2d Spec. Sess., ch.2, § 14. The next day, the governor signed the bill into law. Id.

Here, on appeal, the DOR initially argued that after the 2013 Amendments, Bracken is no longer good law and a QTIP taxed under the federal estate tax code is subject to the Washington estate tax. It further argued that the Washington Supreme

Court should overrule Bracken. The Estate responded arguing that the 2013 Amendments were unconstitutional under several different theories.

On January 21, 2014 this case was stayed pending a decision by the Washington Supreme Court in Hambleton. Notation Ruling Staying Appeal, U.S. Bank v. Wash. State Dept. of Revenue, No. 70514-8-I (Wash Ct. App. Jan. 21, 2014). In Hambleton, a consolidated case, two estates challenged the 2013 Amendments on a variety of grounds. 181 Wn.2d at 809. In both cases, similar to the facts here, spouses died and made federal, but not state QTIP elections well before the ETTA was enacted on May 17, 2005. Id. at 815. And, both surviving spouses died after May 17, 2005. Id. After the 2013 Amendments, the DOR included the value of a QTIP in the surviving spouses' estates. Id.

In Hambleton, the estates made constitutional arguments focusing on the separation of powers doctrine (that the legislature intruded upon judicial power when it retroactively amended the ETTA), the due process clause (that the 2013 Amendments' retroactive application violates due process), impairment of contracts clause (2013 Amendments are a substantial impairment to a contract—the trust), and Article VII, section 1 of the state constitution (uniformity requirement applies here because the ETTA is a property tax). Id. at 816, 817, 823, 830-31, 832-33. The Hambleton court reached a decision on October 2, 2014. Id. at 802. It rejected all of the challenges and concluded that no barriers prohibited the retroactive application of the 2013 Amendments to the estates. Id. at 836.

On October 28, 2014 the stay in this case was lifted and the parties were directed to file supplemental briefs addressing Hambleton's impact on the issues in the case. The

Estate initially requested a stay of this case pending the outcome of a motion for reconsideration in Hambleton and a possible petition for review to the United States Supreme Court. Shortly thereafter, the Washington Supreme Court denied the motion for reconsideration in Hambleton, and this court declined to stay the case pending a petition for review to the United States Supreme Court. Notation Ruling Lifting Stay, U.S. Bank v. Wash. State Dept. of Revenue, No 70514-8-I (Wash. Ct. App. Oct. 28, 2014). As a result, this court directed the Estate to file a supplemental brief addressing the merits of Hambleton's impact. Notation Ruling Directing Suppl. Briefing, U.S. Bank v. Wash. State Dept. of Revenue, No. 70514-8-I (Wash. Ct. App. April 20, 2015).

## DISCUSSION

The Estate concedes that the estates' constitutional challenges raised in Hambleton, to the 2013 Amendments, dispose of those issues here. But, the Estate argues that, notwithstanding the decision in Hambleton, at least three live issues still remain in this case that require either remand for a new trial or the taking of additional evidence.

First, the Estate argues that the Hambleton court did not address one of the arguments the estates made in that case—whether the 2013 Amendments exceed federal constitutional standards. The Estate's argument stems from the legislature's stated intent for the 2013 Amendments. In redefining the meaning of "transfer" in the ETTA, the legislature stated that its intent was to give the word its broadest possible meaning "consistent with established United States [S]upreme [C]ourt precedents." LAWS OF 2013, 2d Sp. Sess., ch. 2, § 1(5). In Hambleton, the estates argued that the established United States supreme court precedents support the analysis in Bracken—

8

not the meaning of "transfer" adopted by the 2013 Amendments.[3] In other words, the estates argued that under federal constitutional law, the termination of a passive lifetime income interest in a trust that occurs upon the death of the surviving spouse cannot be a "transfer." In its briefing in Hambleton, the DOR responded to this argument by arguing that Bracken should be overruled, because other United States Supreme Court cases support the Washington Legislature's interpretation of the word "transfer."

The Estate argues that this issue merits full briefing on remand, because if the United States Supreme Court reverses Hambleton on due process grounds, the DOR intends to take the case forward on the key issue of whether Bracken was wrongly decided. But, the 2013 Amendments to the ETTA—and the meaning the legislature ascribed to the word "transfer"—superseded the interpretation of "transfer" in Bracken. Under the Hambleton decision, the 2013 Amendments are good law in Washington. Hambleton, 181 Wn.2d at 836. The estates already made this same argument to the Hambleton court, and the court declined to explicitly address it. Unless and until Hambleton is reversed by the United States Supreme Court, whether Bracken's interpretation of the definition of "transfer" is narrower than the federal constitutional standard is moot.

Next, the Estate argues that Hambleton's due process analysis is wrong, and that the Washington Supreme Court was under informed of relevant facts necessary to make a due process determination. It states that this argument is the focus of the petition for writ of certiorari of the estates in Hambleton. The Estate points out that both of the

---

[3] The Estate attached the briefing to the Washington Supreme court in Hambleton to its supplemental briefing here on appeal.

consolidated cases in Hambleton were already pending in the Court of Appeals while the 2013 Amendments were enacted. It argues that given this procedural context, neither estate party in Hambleton had an opportunity to conduct additional discovery of the DOR's processes or nonpublic legislative processes that are relevant to the due process analysis of retroactive tax legislation. Consequently, it contends that this court should order additional discovery in this case under RAP 9.11(b) so that the Estate can take additional evidence of agency and legislative actions relevant to due process compliance.

But, the Washington Supreme Court made it clear in Hambleton that the retroactive application of the 2013 Amendments meets the applicable rational basis standard for due process. 181 Wn.2d at 826. And, the Hambleton court's decision is binding on all lower courts in the state. See 1000 Virginia. Ltd. P'Ship v. Vertecs Corp., 158 Wn.2d 566, 578, 146 P.3d 423 (2006). As the Estate noted by referencing the Hambleton estates' petition for a writ of certiorari, the appropriate forum for this argument is before the United States Supreme Court.

Finally, the Estate argues that the Hambleton court did not address the DOR's delay in issuing a refund. The Estate argues that in the wake of Bracken and after the trial court entered its order granting the Estate summary judgment, it was entitled to a refund immediately. Consequently, it argues that this court should not allow the DOR to intentionally withhold tax refunds while the DOR works towards a change in the law. And, it argues that respect for the rule of law requires that the taxpayer have a remedy for the DOR's conduct.

In its initial response brief, the Estate argued that it was entitled to sanctions under CR 11 and RAP 18.9, because the DOR filed a frivolous appeal only for purposes of

10

delay. It argued this was so, because at the time the DOR filed its notice of appeal, the 2013 Amendments were not yet enacted and thus no legal basis existed for the appeal. But, the Estate now concedes that this argument fails in the wake of Hambleton. The Hambleton court concluded that because the appeal in that case was pending when the legislature enacted the 2013 Amendments, and because the estates did not move to dismiss the DOR's appeal as frivolous under RAP 18.9, the 2013 Amendments applied retroactively to those estates. 181 Wn.2d at 836.

Here, like the estates in Hambleton, the Estate did not file a motion to dismiss the appeal as frivolous under RAP 18.9(c). Therefore, Hambleton controls, and the Estate properly conceded its frivolous appeal argument and sanctions argument.[4]

Moreover, notwithstanding the State's conduct, the equities do not compel sanctions on the DOR. Had this case become final before the effective date of the 2013 Amendments, the Estate would receive a refund. Finality was not defeated solely by the DOR failing to obey the last trial court order. The lack of finality was contributed to significantly by the inaction of the Estate. The Bracken decision was decided in the Estates' favor on October 18, 2012. 175 Wn.2d. at 549, 554. The stay in this case was lifted when the mandate issued in Bracken on January 13, 2013. The Estate waited until April 12, 2013 to file its motion for summary judgment. The trial court granted the Estate's

---

[4] Notwithstanding the Hambleton court's decision, this argument is without merit. This is so, because the DOR had reason to know that by the time the appeal was heard a new law would be enacted that could allow it to prevail on appeal. Moreover, a party has a right to appeal a final judgment under RAP 2.2(a). Because the DOR's notice of appeal stated only the order it was challenging—not its arguments or theory on appeal—there is no way to know that the DOR did not have a viable argument on appeal separate from the one it ultimately made once the 2013 Amendments were enacted. In fact, the DOR argues it intended to pursue the appeal notwithstanding the 2013 Amendments on the grounds that Bracken was wrongly decided.

motion for summary judgment on May 14, 2013 ordering the DOR to pay the refund within 10 days. After the DOR violated the trial court's order by not paying the refund within 10 days, the Estate did not engage in additional proceedings to compel the payment. The DOR then timely appealed the order on June 13, 2013. RAP 5.2(a). And, the 2013 Amendments were then signed into law with an effective date of June 14, 2013. LAWS OF 2013, 2d Spec. Sess., ch.2, § 14. The Estate took no action against the DOR to enforce the trial court's order prior to the enactment of the 2013 Amendments. When the trial court granted the Estate's motion for summary judgment in May 2013, Bracken controlled. The trial court did not have the benefit of the 2013 Amendments or the Washington Supreme Court's decision in Hambleton when it made its decision. Those developments require a different result. However, none of the issues raised by the Estate require remand or the taking of additional evidence.

We reverse.

WE CONCUR: